STATE OF CONNECTICUT *v.* HOWARD H. PARKER

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 7-7530

---

Argued February 17—decided March 11, 1966

*John J. Mangan,* of New Britain, for the appellant (defendant).

*Milton A. Fishman,* prosecuting attorney, for the appellee (state).

DEARINGTON, J.  The defendant was convicted on one count of keeping slot machines for gambling purposes in violation of § 53-278 of the General Statutes and has appealed, assigning error in the court's rulings on evidence and in its conclusion that upon all the evidence the defendant was guilty as charged beyond a reasonable doubt.

The court found that the defendant was the proprietor of a luncheonette and variety store in Meriden and on April 5, 1965, possessed two pinball machines which were located in his store.  The machines are operated by inserting a ten-cent coin in a slot, whereupon one of six cards is illuminated.

The cards have the same arrangement of numbers as are used in a bingo game; that is, there are a series of numbers arranged around a center common number in vertical, horizontal and diagonal columns. As a card becomes illuminated, one of five steel balls comes up to the playing surface under glass ready to be struck by a spring-like plunger manually operated by the player. The plunger propels the steel ball onto the playing surface, which is tilted at a slightly uphill angle. After the ball has been propelled upwards on the playing surface, it rolls back down the playing surface, which contains twenty-five holes. In addition to the holes, the playing surface is interspersed with rubber bumpers which bounce the ball in different directions toward and away from the holes. An electrical wiring is so arranged as to illuminate a "tilt" light if the player attempts to control the angle of the playing surface by manually tilting it. The player may utilize five balls successively in one game. A high score is attained when the balls roll into high score holes, which in turn results in illuminating the card lights. After ejection of the fifth ball, the action is ended. By inserting another coin, however, the old score may be carried over into a new game and additional cards illuminate, depending on the prior score. In such an event the play is not with one card. The machines are equipped with counters which record the scores. The defendant admitted he kept a running record of all free games accumulated by a player. A free game or free play results when a high score illuminates several cards which may be carried over to an additional game commenced by the insertion of an additional coin.

The court concluded that the machines were designed for gambling purposes because of the operational features such as counters recording the number of games and credits. The use of skill is

minimal compared with the element of chance in attaining a high score. When scoring is high, credits, free plays, and additional amusement and value are the payoff. The court further found that the operational mechanism and elements of chance were not dissimilar to those described in *Farina* v. *Kelly,* 147 Conn. 444, 447. All the elements of gambling existed, and the defendant was guilty as charged.

The defendant objected to the admission in evidence of one of the pinball machines for the reason that the state had failed to produce evidence of its custody and maintenance from the date of seizure to the time of trial. He does not seriously contend that the machines were other than the ones seized. In support of his claim, he cites such cases as *Gallego* v. *United States,* 276 F.2d 914, *United States* v. *S. B. Penick & Co.,* 136 F.2d 413, *State* v. *Riley,* 1 Conn. Cir. Ct. 523, and *Breeding* v. *State,* 220 Md. 193, all to the effect that physical objects before being admitted in evidence must be shown to be in substantially the same condition as at the time of the offense. Thus the issue is whether a missing link in the chain of evidence relating to the custody of the slot machines resulted in an error in admitting one of them into evidence as an exhibit. Parenthetically, it may be added that after the machine in question was admitted the other machine was received in evidence without objection.

It is a rule of evidence in criminal proceedings that an object must be shown to be in substantially the same condition when offered as it was when the crime was committed. 2 Wharton, Criminal Evidence (12th Ed.) § 674. "Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the con-

sideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence." *Gallego* v. *United States,* supra, 917. "The circumstance that any such articles have been altered before they are offered in evidence does not necessarily affect their admissibility, where there is no evidence that there has been any illegal tampering with them and such alterations do not obliterate or change the condition which is sought to be shown." 20 Am. Jur., Evidence, § 719. Webster, New World Dictionary, defines "tamper" as "to change by meddling." Tamper means " 'to meddle so as to alter a thing; especially to make corrupting or perverting changes; . . . .' " *United States* v. *Tomicich,* 41 F. Sup. 33, 35. The rule therefore does not require the prosecution to exclude all possibility that the article may have been tampered with; rather, the court must be satisfied that in reasonable probability the article has not been changed in any important respect. *United States* v. *S. B. Penick & Co.,* supra, 415.

In the instant case, there was evidence that after the machines were seized they were kept in a corridor in the local police station chained to the wall. They were identified as being the machines seized by the serial numbers appearing on each. Access to the mechanism of the machines could only be gained by unlocking the locked machines by keys. In the presence of the court, the officer played the machine which the defendant had objected to being received in evidence. After playing the machine, the officer stated that it appeared not to have been tampered with. He was unable, however, to state whether or not the spring tension, tilt, and rubber bumpers were in the same condition as when the machine was seized, but from his observation and his playing of the machine he stated that the mecha-

nism controlling the element of chance involved appeared to be in the same condition as when the machine was seized. The court had the advantage of observing the machine and witnessing a demonstration of the machine being played. Considering the nature of the machine, the principles involved in its operation, the purpose for which it was designed and being offered, and its location while held in custody, it cannot be said that the court erred in concluding that the machine had not been changed in any important respect. Furthermore, the chances of the machine having been tampered with which were advanced by the defendant were mere hypotheses.

The defendant further claims that the court erred in allowing in evidence certain testimony of Lieutenant Page, a witness for the state. The witness was asked on direct examination whether he had any conversation with the defendant relating to what the defendant did about accumulated free plays. The witness answered in the affirmative and stated that the defendant told him that he, the defendant, paid off. The defendant objected to such testimony, claiming that to "pay off" was not relevant to the offense charged. In its bill of particulars, the state alleged that the defendant kept pinball machines designed to provide free plays upon scoring certain numbers or combinations. When a defendant is charged under a broad allegation and the state by its bill of particulars alleges a specific act of unlawfulness under that allegation, it is limited in its proof of the violation to substantially the manner of commission described in the bill of particulars. *State* v. *DiLorenzo,* 138 Conn. 281, 284; *State* v. *Scott,* 80 Conn. 317, 321. This rule, however, does not prohibit the receiving of evidence otherwise relevant and material to the question in issue. "One fact is relevant to another fact when-

ever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." *State* v. *Sebastian,* 81 Conn. 1, 3. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue." *Plumb* v. *Curtis,* 66 Conn. 154, 166. The prosecutor was trying to show that free games or plays could be indulged in by a player. To an inquiry relating to accumulated free plays, the defendant voluntarily replied that he paid off. The defendant's answer bore directly on the probability of free plays and in that respect it was relevant and material. That such a reply might tend to indicate a violation of some other interdict under § 53-278 would not make it inadmissible if it were otherwise relevant and material. *State* v. *Simborski,* 120 Conn. 624, 631; *State* v. *Palko,* 122 Conn. 529, 536. The determination of relevancy is one for the discretion of the trial court unless the record indicates an abuse of discretion. *Pitt* v. *Kent,* 149 Conn. 351, 357. No such abuse has been shown here.

Finally, the defendant claims that the court erred in concluding that upon all the evidence he was guilty beyond a reasonable doubt. An examination of the evidence satisfies us that the court did not err in this respect.

There is no error.

In this opinion KOSICKI and JACOBS, Js., concurred.