481 P.2d 34

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Mary Ann GRIFFITH and April Jo La Vala, Defendants-Appellants.**

**No. 10414.**

Supreme Court of Idaho.

Feb. 16, 1971.

78

Kent B. Power, Boise, for appellant April Jo La Vala.

Howard I. Manweiler, Boise, for appellant Mary Ann Griffith.

Robert M. Robson, Atty. Gen., Stewart A. Morris, Asst. Atty. Gen., James A. Risch, Deputy Pros. Atty., Boise, for appellee.

SPEAR, Justice.

Mary Ann Griffith and April Jo LaVala, appellants herein, were tried for the offense of armed robbery resulting in a jury verdict of guilty. They were subsequently sentenced to five years in the Idaho Penitentiary, and this appeal followed.

During the evening hours of September 7, 1968, Ronald L. Wakefield, an Airman at the Mountain Home Air Force Base, met the appellants in downtown Boise. After some conversation, Wakefield and the appellants proceeded to a local bar where Wakefield bought the appellants several drinks. During the ensuing conversation that accompanied the drinks, there is evidence indicating Wakefield either propositioned, or was propositioned by, the appellants; a fee of $25 apiece being the consideration for his sexual gratification. At any rate, the offer apparently was accepted. Wakefield subsequently became sick and left the bar, with the aid of appellants, and the three of them proceeded to the nearby Del Rio Hotel. The hotel owner testified that appellant Griffith asked for a room for three, but the request was denied. Appellants, to the contrary, maintained they were not trying to get a room for three, but were merely two Samaritans, trying to get a room for the ill Wakefield to keep him from getting arrested for being publicly intoxicated.

Wakefield testified that after being refused a room at the Del Rio, appellant Griffith offered to try another hotel but he suggested that they go to a room which he had rented earlier that evening at another hotel. The appellants refused to go and thereupon appellant Griffith pulled a pistol from her purse and demanded that Wakefield "pay them for their time" by giving them all of his money. Wakefield grabbed the gun and the three of them fell to the ground. When Wakefield looked up again, Mrs. LaVala was standing holding a different gun on him. Mrs. Griffith then pulled his coat up over his head, and he felt a hand remove his wallet and another remove his money from his shirt pocket; a total of about $25 was taken. After removing his coat from his head, he saw Mrs. LaVala standing nearby going through his wallet and she then threw it back to him at his request.

Appellant testified that after being refused a room at the Del Rio, appellant Griffith offered to try another hotel but Wakefield suggested that they go to his room which he had already rented. Appellants decided not to go to his room and began to leave. Wakefield, who was being supported as he walked by the two women, then pushed appellant LaVala to the ground and fell on top of her. Appellant Griffith then jumped into the melee and onto Wakefield and pulled his coat over his head in her attempts to restrain him. Wakefield then yelled, "Take my money, take my money, but leave my wallet," and threw his wallet at them. Appellants picked up their purses and brushed themselves off, and appellant LaVala put the papers which had fallen out of Wakefield's wallet back into the wallet and threw it back to him. Neither of the appellants admitted to any overt use of a weapon, although both admitted that among the contents of their purses scattered on the sidewalk during the struggle were two small caliber pistols. Appellant LaVala explained that

she never carried a gun, but had put the gun into her purse that day to take it to a repairman who failed to come to work that day. She testified her pistol was unloaded and would not operate double action, but would fire single action. Appellant Griffith asserted that she had loaned her fully loaded gun to a friend, and that very day he had returned it to her in the same condition, fully loaded.

The three do agree that during the struggle, a man in a truck, one Joe Chipanno, stopped and inquired as to the problem. Appellant Griffith told him that there was no problem and to mind his own business or he would get hurt. The man then drove around the block and came back, at which time the appellants had left. He asked Wakefield the problem and the latter replied he had been "rolled." The man subsequently notified the police that a robbery had taken place and pointed out the appellants, who were in a nearby bar, as the robbers. Wakefield also phoned in a report of the incident to the police.

Appellants first contend that the lower court erred in refusing to grant their motion to dismiss the information, alleging the information was ambiguous, uncertain and unintelligible to the extent that the statutory violation could not be ascertained, and thus was nonconforming to the requirements of I.C. §§ 19–1409(2), 19–1411 (3), and 19–1413.

The information charged:

"That the said defendants, MARY ANN GRIFFITH and APRIL JOE (JO) LAVALA, on or about the 7th day of September, 1968, in the County of Ada, State of Idaho then and there being, did then and there wilfully, unlawfully, intentionally, feloniously and forcibly take from the person of, or immediate presence of one Ronald L. Wakefield, certain property, to-wit: Twenty-five Dollars ($25.00), lawful money of the United States, and the personal property of the said Ronald L. Wakefield, which taking was then and there without the consent, and

against the will of the said Ronald L. Wakefield, and was then and there accomplished by means of force and fear, in that defendants, MARY ANN GRIFFITH and APRIL JOE (JO) LAVALA then and there pointed a certain deadly weapon, to-wit: a pistol at the said Ronald L. Wakefield."

Appellants object in particular to the charge of having taken property "from the person of, or immediate presence of" Wakefield, and claim that such language is misleading in that it "appears to give the appellants notice of two possibilities of crimes, but does not notify them which, if either, could be proved." They further assert that the rules of pleading a criminal charge in the State of Idaho require a plain statement of a single offense, citing I.C. §§ 19–1409 and 19–1413.

This court reviewed the requirements of a criminal information in the case of State v. McKeehan, 91 Idaho 808, 430 P.2d 886 (1967). No change in the statutory or case law upon which that case was based has since occurred and the court's statement therein remains the valid criteria of the sufficiency of an information. The court stated:

"Our statute, and several recent cases, require that a criminal information properly inform an accused of the exact nature of the charge against him, so that (1) the accused has the means to prepare a proper defense, and (2) he can protect himself against the subsequent prosecution based on the commission of the same acts. See State v. Grady, 89 Idaho 204, 404 P.2d 347, and cases cited therein. The pertinent statutory provisions are found in I.C. §§ 19–1409 to 19–1411, 19–1418 to 19–1420 inclusive, made applicable to criminal informations by virtue of I.C. § 19–1303. State v. McMahan, 57 Idaho 240, 65 P.2d 156.

"Therefrom it appears that the criminal information must contain '[a] statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of

common understanding to know what is intended' and must be direct and certain as it regards '[t]he particular circumstances of the offense charged, when they are necessary to constitute a complete offense." I.C. §§ 19–1409, 19–1411." 91 Idaho at 814–815, 430 P.2d at 892–893.

In the information, the appellants were charged with the crime of robbery. That crime is defined in I.C. § 18–6501 as follows:

> "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

 Regardless of whether the money was taken from the person, or from the immediate presence of the person, that taking against his will and by means of force or fear constituted robbery, the single crime charged. Where the statute enumerates a series of acts, either of which separately or all together may constitute the offense, all of such acts may be set forth and charged in a single count since even though each act may by itself constitute the offense, all of them would do no more. State v. Salhus, 68 Idaho 75, 189 P.2d 372 (1948); State v. Scott, 72 Idaho 202, 239 P.2d 258 (1951). The information, as worded, therefore, properly informed the appellants of the nature of the charge against them, set forth every element necessary to constitute the offense with which the appellants were charged, stated the particular circumstances of the offense charged, and afforded them the means by which to prepare a proper defense.

 The appellants' contention that the information was defective on the ground that it did not charge a single offense as required by I.C. § 19–1413 is also without merit. The statute cited requiring an information to charge but one offense was repealed by the legislature in 1963, and has never been reenacted. Idaho Session Laws 1963, Ch. 159, § 1, p. 463. Furthermore, al-

though the information could thus have charged more than one offense, it did in fact only charge the appellants with the single offense of robbery.

In their second specification of error, the appellants cite the court's action in allowing the deputy prosecuting attorney to endorse an additional witness on the information after the filing of that instrument, and just prior to trial. The record reveals that prior to the endorsement of the name of the additional witness, Officer Florenzen, the court, in the presence of the counsel for appellants, requested from the deputy prosecuting attorney a statement disclosing what the nature and extent of the witness' testimony would be. The prosecuting attorney replied:

> "MR. RISCH: Your Honor, his testimony will be to the effect that on the evening in question he proceeded to the Buffalo Club to assist Officer Logan who was at that time about to make an arrest. Officer Florenzen entered the Buffalo Club with Officer Logan. The two of them came out to the sidewalk. At that time Officer Logan turned custody of Mrs. LaVala over to Officer Florenzen who at that time took her to the station, and at the station he again turned her over, custody, to Officer Logan. This will be the essence of his testimony here today.

> "THE COURT: Well, all right, then I am going to overrule the objection, assuming that is a fair statement of his testimony.

> "I fail to see how this defendant can be prejudiced by that testimony unless you can show me where it is. Huh? (no response by counsel)

> "All right, it may be added then.
> * * * *"

In support of their assertion that the court's allowance of the endorsement constituted error, the appellants argue that the substance of Officer Florenzen's testimony was incorrectly disclosed by the deputy prosecuting attorney in that the officer's

actual testimony included speculation and new information concerning the intoxication of Wakefield and, in addition, that by the late endorsement of the officer's name, appellants were deprived of their right to interview the officer and prepare for trial.

█ The purpose of endorsing the names of the witnesses on the information is to inform the defendant of the witnesses who are to testify against him, and to give him an opportunity before the trial to interview such witnesses and prepare for trial. State v. Mundell, 66 Idaho 297, 158 P.2d 818 (1945); State v. Fedder, 76 Idaho 535, 285 P.2d 802 (1955); State v. Fisk, 92 Idaho 675, 448 P.2d 768 (1968). Great caution should be exercised before permitting a witness' name to be endorsed on the information during the course of trial, and it is only in those situations where no prejudice to the defendant would result that the endorsement should ever be allowed. State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960).

█ In this case, the substance of Officer Florenzen's testimony was essentially and correctly revealed by the statement of the deputy prosecuting attorney prior to the trial. Although appellants claim the officer's testimony included speculation and new information concerning the intoxication of Wakefield, no objection was made by either of the appellants' counsel as to any of the officer's testimony. He was not cross-examined. The officer's sparse statements as to Wakefield's degree of intoxication were not prejudicial to the appellants' cause, because they were merely cumulative since Officer Logan and other witnesses had testified similarly and at length regarding Wakefield's intoxication.

We deem it important to note also that although appellants allege that they were deprived of their right to interview Officer Florenzen and prepare for trial because of the late endorsement of his name on the information, at no time did they make a motion for a continuance to obtain time for further preparation as to the testimony of that witness. Appellants knew the substance of the officer's testimony prior to the en-

dorsement, and if they were prejudiced or surprised by the officer's testimony, they should have moved for a continuance of the trial at the time the State moved for the endorsement. State v. Coburn, supra. There is no showing of prejudice to appellants by the later endorsement of the officer's name as a witness on the information, and the court committed no error in allowing such endorsement.

█ Appellants next assert error on the part of the trial court in admitting in evidence State's Exhibit Number Three, which was appellant LaVala's pistol. Appellants refer to the testimony of Officer Logan, in which the officer testified that he took the unloaded gun from Mrs. LaVala and that it would only fire by the manual use of the hammer. Subsequently, while he was making out his report at his desk, another officer picked the gun up from his desk, found a loose screw and tightened it, after which the gun would then operate not only by the manual use of the hammer, but also by pulling the trigger without first pulling the hammer back. Appellants contend that since the condition of the gun changed between the time it was seized and the time at which it was offered in evidence, the proposed exhibit did not satisfy the "chain of evidence" requirements, and should therefore not have been admitted.

█ In criminal proceedings, it is a rule of evidence that an object must be shown to be in *substantially* the same condition when offered as it was when the crime was committed. 2 Wharton, Criminal Evidence (12th Ed.), § 674; State v. Parker, 3 Conn. Cir. 598, 222 A.2d 582 (Ct.App.Div.1966). "It is not necessary that an object which is offered in evidence should be in precisely the same condition at the moment of its offer as at the time when it played a part in the occurrence which gave rise to its offer in evidence. But, the change in its condition must not have been wrought for unjustifiable purposes, and it must not be of sufficient moment so that the exhibit will mislead. Normally the receipt in evidence of the object under such circumstances is committed to the sound discretion

of the trial judge. * * *" State v. Hood, 225 Or. 40, 356 P.2d 1100, 1103 (1960). Where the court is satisfied that in all reasonable probability the article has not been changed in any important respect, the article is admissible in evidence. Gallego v. United States, 276 F.2d 914 (9th Cir. 1960); State v. Coon, 244 Or. 618, 419 P.2d 941 (1966); State v. Parker, supra.

Although it is extremely careless police procedure to tamper with or in any way alter evidence in police custody, appellant LaVala's gun was not changed in any important respect. Since no one contended that appellant LaVala had fired the gun, and whether or not the gun would actually fire was not in issue, it was not critical that the condition of the gun had been changed to allow the gun to be fired *easier*. The value in the admission of the gun as an element of proof lay not in the fact that it could fire, but in the fact that Wakefield may have feared that it would and relinquished his money because of that fear. In addition, the jury was in no manner misled as to the condition of the gun, since Officer Logan testified in detail as to the condition of the gun before and after the change. Thus, the court committed no error in admitting the gun as an exhibit.

Both appellants assign error to rebuttal witnesses called by the prosecutor testifying to the defendant's reputation for truth, honesty and integrity. Two members of the Boise Police Department testified; one, Officer Gene Johnson, testified Mrs. Griffith had a poor reputation, and Investigator Rex Mehl testified that both defendants had poor reputations.

■ I.C. § 9–1209 provides that "[a] witness may be impeached by the party against whom he was called * * * by evidence that his general reputation for truth, honesty or integrity is bad but not by evidence of particular wrongful acts * * *." At trial both defendants took the stand to testify in their own defense. The district judge, relying on this statute and State v. Storms, 84 Idaho 372, 372 P.2d 748 (1962), permitted the rebuttal testimony by the prosecutor's witnesses. It is clear that when an accused takes the stand in his own defense, he is automatically subject to impeachment the same as any other witness, and his or her credibility is an issue in all instances. See also, I.C. §§ 9–201 and 19–2110.

■ The transcript shows that the prosecutor had difficulty framing his questions to Officer Johnson. Eliciting testimony regarding a person's reputation in the community requires care so as to avoid the mention of past wrongful acts. Unfortunately, Officer Johnson, as to Mrs. Griffith, spoke of two prior incidents, an armed robbery in downtown Boise and a child custody matter. The mention of the robbery was quickly stricken and the jury told to disregard same. A careful reading of the transcript shows that Officer Johnson gave an answer to a question which had just been disallowed by the court. The rephrased question may have confused the witness or he may have intentionally made an unresponsive statement. Nevertheless, the effect does not seem substantially damaging; the officer's statement did not implicate Mrs. Griffith in a robbery but rather, implied her name had come up when he was interrogating the actual suspect. Such testimony was erroneous but not in itself a severe imperfection in the conduct of the trial.

■ Appellants also assert that the verdict of the jury was contrary to the law and the evidence presented, in that no evidence was introduced of any asportation of property by either of the appellants. A review of the record reveals substantial, competent evidence of asportation of Wakefield's property by the appellants. The decision as to the credibility of witnesses, as well as the weight to be given their testimony, is exclusively the province of the jury. State v. Weise, 75 Idaho 404, 273 P.2d 97 (1954); State v. Hall, 88 Idaho 117, 397 P.2d 261 (1964). Where there is competent and substantial, though conflicting, evidence to sustain a verdict, this court will not re-weigh the evidence or disturb the

verdict. State v. Pruett, 91 Idaho 537, 428 P.2d 43 (1967); State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Ross, 92 Idaho 709, 449 P.2d 369 (1968).

Appellants cite a number of incidents indulged in and statements made by the deputy prosecuting attorney during the trial which appellants assert constituted prejudicial error. They further contend that the court erred in not granting their motion for a mistrial based on the alleged "pervasive misconduct."

 The first occurrence enumerated by the appellants is the deputy prosecuting attorney's failure to call one of the witnesses, Joe Chipanno, whose name was endorsed on the information. It is not mandatory that the state call all of the witnesses whose names are endorsed on the information. State v. Rice, 7 Idaho 762, 66 P. 87 (1901); Hood v. State, 80 Okl.Cr. 175, 157 P.2d 918 (1945); Warren v. People, 121 Colo. 118, 213 P.2d 381 (1949); State v. Jordan, 83 Ariz. 248, 320 P.2d 446 (1958). Neither party is required to call any person as a witness whose testimony he is not willing to vouch for, and should the deputy prosecuting attorney call a witness whom he had reason to believe would testify falsely in favor of either the defendant or the State, he would violate his oath of office. People v. Larrios, 220 Cal. 236, 30 P. 2d 404 (1934). In this case, the appellants' contention is particularly without merit in view of the fact that they were allowed to and did call the witness on their own behalf, and elicited his testimony.

 The next incident cited by the appellants is the action of the deputy prosecuting attorney in calling the prosecuting attorney as a witness for the State to impeach the testimony of one of the appellants' witnesses. The prosecuting attorney testified that the testimony of Joe Chipanno, the witness who had driven by in his truck at the time of the struggle between appellants and Wakefield, was substantially different from the statements Chipanno had made to him in an interview the morning after the robbery. Although this court held in State v. Wilmbusse, 8 Idaho 608, 70 P. 849 (1902), that a prosecuting attorney could be called as a witness for the state in a criminal action, such procedure is generally unwarranted and inappropriate, and should be avoided if at all possible. Only in a case in which his testimony is absolutely essential should the prosecuting attorney be called to testify against the defendant. Although the prosecuting attorney's testimony was not absolutely essential in the case before the bar, the appellants were not prejudiced by his statements and no reversal is warranted. It should also be noted that neither of the attorneys for the defense objected to the prosecuting attorney giving the testimony.

 Thirdly, appellants charge impropriety on the part of the deputy prosecuting attorney in attempting to mislead one of the appellants' witnesses by stationing in the rear of the courtroom among the audience, a young man who looked very similar to the prosecuting witness, Wakefield, and who was dressed similarly, and by asking the witness on the stand to "show who Mr. Wakefield is in the courtroom." The witness replied that she could not see him in the courtroom, and, upon the query of appellants' counsel and the trial judge, the deputy prosecuting attorney stipulated that Wakefield was not actually in the courtroom.

Any attempt by the deputy prosecuting attorney to purposely mislead one of the appellants' witnesses, and thus indirectly to mislead the court and jury, would constitute highly improper and reprehensible conduct. From the record we do not know whether the prosecution instigated these courtroom theatrics but we want it clearly understood they meet with this court's disapproval.

In this instance, the trial court correctly denied appellants' offer of proof that the alleged misconduct had occurred since the witness did not mistakenly identify Wakefield. Furthermore, in the final argument to the jury, counsel for the defense explained what had happened in the court-

room audience. In light of these two factors, no prejudice resulted.

It seems that the tactics just described were the result of overzealousness by the prosecution. While each side ought to present the case vigorously, the prosecution's role takes on larger proportions. Again, a reference to the Canons of Professional Ethics of the Idaho State Bar sums our views. Canon 5 includes the following language,

> "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. * * *"

We have examined each of the other incidents cited by the appellants as constituting misconduct on the part of the prosecution, but after careful study of the entire record we do not think that appellants' substantial rights have been so adversely affected thereby that the appellants were denied a fair trial.

The judgment of the district court is affirmed.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.