817 P.2d 1090

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**John Easton BRADLEY, Defendant–Appellant.**

**No. 18951.**

Court of Appeals of Idaho.

Sept. 3, 1991.

Petition for Review Denied Oct. 22, 1991.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

John Bradley was found guilty by a jury of violating I.C. § 18–8004, the statute prohibiting driving while under the influence of alcohol. On appeal, Bradley seeks to have his conviction overturned, contending that the police failed to follow required procedures in administering the breath-alcohol test, and that the magistrate erroneously admitted the test results into evidence. Additionally, Bradley challenges the magistrate's decision to allow the state to call as a witness an assistant city attorney who had witnessed Bradley's arrest. We hold that no error occurred and we affirm judgment of conviction.

## I

On January 28, 1989, just after midnight, Coeur d'Alene Police Officer Gary Brookshire observed John Bradley driving his vehicle with its lights off, without making the proper signals while turning, and straddling the center lane of the road. Officer Brookshire stopped Bradley for suspicion of driving under the influence. Shortly after Bradley was stopped, another patrol car, occupied by Officer Kevin Peden and assistant city attorney David Johnston, arrived at the scene. Bradley exited his vehicle but refused to perform any field sobriety tests. Officer Brookshire then arrested Bradley for driving under the influence (DUI) and transported him to the Kootenai County Public Safety Building. There, Steven Seely, an officer trained and certified by the Department of Law Enforcement to operate the Intoximeter 3000 breath-testing machine, briefly observed Bradley and then, using the Intoximeter, administered the alcohol-content test on two samples of Bradley's breath. The results of the tests indicated a breath-alcohol content of .25 and .26 respectively. Brad-

ley was charged with, and pled not guilty to, driving under the influence of alcohol, I.C. § 18–8004.[1]

At trial, Bradley objected to the admission of the Intoximeter test results on the ground that the state had not shown that Officer Seely personally had observed Bradley for the requisite fifteen-minute period prior to administering the test. However, the state offered the testimony of Officer Brookshire, who was not certified to administer the breath test, but who had received some police training in the observation of DUI subjects. Officer Brookshire testified that he had observed Bradley for the requisite period before Bradley blew into the machine. Upon this showing, the magistrate found that the state had met its foundational burden, overruled the objection and admitted the Intoximeter test results. Bradley additionally objected to the state's calling Johnston, the assistant city attorney, as a witness. This objection also was overruled, and Johnston testified to his observations of Bradley at the scene of the arrest. The jury returned a verdict finding Bradley guilty of "driving while under the influence of alcohol, and/or while having an alcohol concentration of 0.10 percent or more, as shown by analysis of his breath." Bradley sought review in the district court, which affirmed the judgment of conviction. On further appeal, Bradley contends that he is entitled to a new trial because the magistrate committed prejudicial error in admitting the Intoximeter test results and in permitting the assistant city attorney to testify.

## II

We first consider whether the magistrate properly admitted the Intoximeter test results. Bradley argues that the Intoximeter

---

1. In relevant part, I.C. § 18–8004(1)(a) and (4) provide:

   (1)(a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or who has an alcohol concentration of 0.10, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state,

whether upon a highway, street or bridge, or upon public or private property open to the public.

. . . . .

   (4) For purposes of this chapter, an evidentiary test for alcohol concentration shall be based upon a formula of grams of alcohol per one hundred (100) cubic centimeters of blood, per two hundred ten (210) liters of breath or sixty-seven (67) milliliters of urine. . . .

test results should have been excluded on the basis that the state failed to show that the tests were administered in conformity with the applicable test procedures. Specifically, he contends that the applicable procedures required Officer Seely—the certified person administering the test—to personally observe the subject, Bradley, for a period of fifteen minutes prior to taking the breath samples. The state takes the contrary position that it was not required to establish that the certified operator had observed Bradley for the requisite period, only that it show "someone" had observed him.

■ We initially note that the *scientific process* used by the Intoximeter 3000 is widely recognized and it is unnecessary for the state to present evidence establishing that test's general reliability in order to have the test results admitted into evidence. *State v. Wilson*, 116 Idaho 771, 774, 780 P.2d 93, 96 (1989); *State v. Hartwig*, 112 Idaho 370, 732 P.2d 339 (Ct.App. 1987). However, we have held that the state still must establish at trial that the administrative procedures which ensure the reliability of that test have been met. *State v. Bell*, 115 Idaho 36, 764 P.2d 113 (Ct.App.1988). Compliance with the requisite standards and methods is a foundational prerequisite to having the test results admitted into evidence. *Id.* Accordingly, the resolution of this issue turns on the identification and construction of the regulations governing the administration of a breath test using an Intoximeter 3000. Because this is a question of law, we exercise free review.

■ Idaho Code § 18–8004(4), which describes the testing of drivers for alcohol concentration, mandates that an "[a]nalysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a . . . method approved by the Idaho department of law enforce-

ment. . . ." [2] Pursuant to this delegated authority, to which we accord the force and effect of law and regard as an integral part of the statute under which it was made,[3] the Department of Law Enforcement promulgated rules stating, in part, that "[b]reath tests shall be administered in conformity with standards established by the department" and that the applicable standards "shall be issued in the form of policy statements and training manuals." 11 IDAPA .03(4). The standards relevant to the administration of the breath test at issue in this case are those contained in the training manual for the Intoximeter 3000. *See* DEPARTMENT OF LAW ENFORCEMENT, THE OPERATOR'S TRAINING MANUAL FOR USING THE INTOXIMETER 3000 (Rev.1988) (hereinafter MANUAL). The manual expressly provides that "[o]nly a certified officer who has received Intoximeter 3000 training approved by the Idaho Department of Law Enforcement can operate the instrument." MANUAL, *supra*, at 11.

Regarding the specific procedures which apply to the administration of the breath test, the manual states:

### OPERATING PROCEDURE FOR A BREATH TEST

Observe the subject for 15 minutes.

Insert a new mouthpiece in the end of the BREATH TUBE.

Check the rotating display for correct date and time.

To conduct a breath test, push the START key and respond to the displayed messages.

The manual also provides the following explanation and instruction:

### FIFTEEN MINUTE WAITING PERIOD

The mucous lining of the mouth and nasal passages can store alcohol for a peri-

---

2. Prior to July 31, 1988, Idaho Code § 18–8004(4) authorized the Department of Health and Welfare, rather than the Department of Law Enforcement, to approve and certify the methods and procedures for analyzing a person's blood, breath or urine. *See* 1988 Idaho Sess. Laws, ch. 47, pp. 64–65.

3. *See Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979). Similarly, principles of statutory construction also apply to the regulations issued by administrative agencies. *Bingham Memorial Hosp. v. Dept. of Health and Welfare*, 112 Idaho 1094, 739 P.2d 393 (1987).

od of time after a person consumes alcohol. Normal body processes eliminate this mouth alcohol within 15 minutes. Observe the subject closely for 15 minutes. During this time, the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other foreign substance in the mouth. If belching or vomiting does occur or something is found in the mouth during this time, start the 15 minute waiting period over again.

MANUAL, *supra*, at 5.

It is plain from the language of the manual that a fifteen-minute observation is part of the "operating procedure" for conducting a breath test with the Intoximeter. However, the state urges that where, as here, the certified operator fails to make the preliminary observation of the test subject, an uncertified officer's observations may serve as a substitute. We agree.

Nothing in the manual expressly mandates that only a certified officer can observe the subject for the required fifteen minutes before administration of the Intoximeter test. Indeed, a defense witness, the criminologist in charge of the state's North Idaho breath alcohol programs, both as to training of the officers and certification of the machines, testified that the manual does not specifically state that a particular person must do the observation. Although the criminologist testified that it is *suggested* that the certified operator be the person who observes the subject, the manual does not mandate this procedure.

The purpose of the fifteen minute waiting/observation period is to reduce the risk of invalid test results from various conditions which might occur after the time of arrest. This purpose was accomplished in this case by the observations of the arresting officer. The officer testified at trial as to his qualifications for making the fifteen-minute observation, his usual procedure for making the observation, the length of time

he observed Bradley, the method and conditions of the observation, and the results of the observation. As to the results, the officer testified that during the fifteen-minute period Bradley in fact was not allowed to eat, drink, swallow or chew anything, and that he did not burp, vomit or belch. This testimony, coupled with the testimony of the officer who actually operated the Intoximeter 3000, was sufficient to comply with the admonition of *State v. Bell, supra,* that the state must meet its own administrative procedures to ensure the reliability of the Intoximeter test. Accordingly, we hold that the magistrate did not err by admitting the results of the Intoximeter test into evidence.

### III

We next address Bradley's challenge to the magistrate's decision permitting David Johnston, a lawyer employed by the Coeur d'Alene City Attorney's Office, to testify before the jury. The record in this case indicates that Johnston was riding in a patrol car driven by Officer Peden, who was on duty as a back-up for Officer Brookshire. In response to a radio call, Officer Peden drove to the scene where Officer Brookshire had stopped Bradley.[4] From a distance of approximately seven feet, Johnston watched Bradley exit his vehicle, observed his movements and listened to his speech. The state, represented by Coeur d'Alene Deputy City Attorney Weibe, called Johnston to testify to these observations.[5]

To support his argument that Johnston should not have been allowed to testify, Bradley cites *State v. Griffith,* 94 Idaho 76, 481 P.2d 34 (1971), in which our Supreme Court censured the practice of calling a prosecutor to testify against a criminal defendant. In that case, the Ada County deputy prosecutor handling the case called the Ada County Prosecuting Attorney as a rebuttal witness to impeach the testimony

---

**4.** The record indicates that Johnston had met with Officer Peden for coffee to discuss an unrelated case, and that Officer Peden was driving Johnston home when the call to assist Officer Brookshire came over the police radio.

**5.** The record indicates that Johnston was not involved in the preparation or prosecution of Bradley's case, and that his only participation was as an eyewitness to the arrest.

given by one of the defense witnesses. Holding that the deputy's conduct in calling the County Attorney was improper, the Court stated, "[o]nly in a case in which his testimony is absolutely essential should the prosecuting attorney be called to testify against the defendant." *Id.* at 83, 481 P.2d at 41. Bradley submits that the rule stated in *Griffith* is controlling authority in this case, and that Johnston's status as an assistant city attorney should have precluded the state from calling him as a witness. We disagree.

Although the Court pronounced its holding in *Griffith* without expressing a rationale, we believe that its broadly stated prohibition reflects the standards of professional ethics then prevailing. We note that very shortly after it issued *Griffith*, the Supreme Court approved the Code of Professional Responsibility ("Code"), as adopted by the Idaho State Bar, thus formally standardizing[6] the ethical principles governing the practice of law in Idaho.[7] Pursuant to those ethical considerations and disciplinary rules, it was highly improper for an attorney to appear as a witness in any case where another attorney belonging to the same firm or organization represented one of the parties. *See* CODE OF PROFESSIONAL RESPONSIBILITY DR 5-101, 5-102 (1971). However, in 1986, the Supreme Court adopted the Idaho Rules of Professional Conduct ("Rules"), supplanting the Code. In sharp departure from the Code provisions, the Rules expressly provide that, "[a] lawyer may act as advocate in trial in which another lawyer in the lawyer's firm is likely to be called as a witness" unless precluded from doing so by the conflict-of-interest rules, which are not relevant in this case. IDAHO RULES OF PROFESSIONAL CONDUCT 3.7(b).[8] Thus, the underlying ethical reasons for enjoining a prosecutor from participating as a witness for the state which were present in *Griffith* do not exist under the current rules.[9] We therefore hold that *Griffith* is not controlling authority on the subject in this case.

In further support of his position, Bradley maintains that Johnston should have been barred from testifying as a witness by virtue of Johnston's prosecutorial duty to refrain from expressing an opinion concerning the evidence or as to a defendant's guilt. *See* ABA Standards, The Prosecution Function, § 5.8(b). However, Johnston did not appear before the court and jury in his prosecutorial role. Rather, the state called Johnston as an "independent" eyewitness to Bradley's conduct at the time of arrest.[10] Accordingly, we find no prosecutorial misconduct on the part of Johnston.

We are mindful, however, that the conduct of a prosecutor appearing before a jury may present special concern "because of the prestige associated with the office." 1 ABA Standards, The Prosecution Function, Commentary to Standard § 3–5.8 (2d ed. 1986 Supp.). Although the fact that a given witness happens to hold a position of public trust does not automatically disqualify that person from giving competent, relevant testimony against a defendant in a criminal case, we note that where such perceived "prestige" threatens to improperly influence the jury, the trial court must weigh the probative value of the testimony against any unfair prejudice which may result to the defendant before admitting the testimony into evidence. *See* I.R.E. 403. Furthermore, the record in this case

---

**6.** *Griffith* was decided in February of 1971. The Supreme Court issued its order approving the Code on June 25th of that same year.

**7.** The prosecutor is a lawyer and is subject to the standards of professional conduct and discipline as defined in codes and canons of the legal profession. ABA Standards, The Prosecution Function §§ 1.1(d), 2.1 (1971).

**8.** The reference to "law firm" denotes not only lawyers in private firms, but lawyers employed in legal departments of service and other organizations, including government agencies such as the Office of the Prosecuting Attorney. *See* IDAHO RULES OF PROFESSIONAL CONDUCT 1.10, comment.

**9.** At trial, Bradley argued only that Johnston's appearance as a witness for the state violated the ethical standards of conduct.

**10.** Johnston told the jury that he was an attorney for the City of Coeur d'Alene. The fact that Johnston had prosecuted misdemeanors was later elicited by the defendant.

discloses that it was the defense, not the prosecution, that elicited the evidence that Johnston was a "prosecutor." The state introduced Johnston simply as "an attorney employed by the City of Coeur d'Alene." Thus, any claimed prejudice stemming from the fact that the jury might have accorded greater credibility to Johnston because of his experience as a prosecutor must be attributed to the defendant's choice of strategies, not to the state. Consequently, we find no error in the magistrate's decision to permit Johnston to testify.

Accordingly, the judgment of conviction is affirmed.

SWANSTROM, J., and SILAK, J., concur.