882 P.2d 993

STATE of Idaho, Plaintiff–Respondent,

v.

Dawn M. REMSBURG, Defendant–
Appellant.

No. 20874.

Court of Appeals of Idaho.

Oct. 6, 1994.

Danny J. Radakovich, Lewiston, argued
for appellant.

Larry EchoHawk, Atty. Gen., Douglas A.
Werth, Deputy Atty. Gen., Boise, for respon-
dent. Douglas A. Werth argued.

PER CURIAM.

In this case we address what it means to
"closely" observe a subject for fifteen min-
utes prior to administering the Intoximeter
3000 breath test. Our conclusion upholds the
district court's reversal, on an intermediate
appeal, of a magistrate's order suppressing
the use of the test results in a criminal
prosecution for driving while under the influ-
ence.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On March 1, 1992, Patrol Officer Phillip
Campbell of the Lewiston Police Department
stopped an automobile for expired license-
plate registration. While speaking with the
driver of the vehicle, Dawn Remsburg,
Campbell detected an odor of alcohol and
noticed that Remsburg's eyes were watery
and bloodshot. Campbell conducted field so-
briety tests on Remsburg, including the walk
and turn, one leg stand, and horizontal gaze
nystagmus tests. Based on Remsburg's poor
performance on these tests and her state-
ment, "So I'm drunk, so what," Campbell
placed her under arrest for driving under the
influence (DUI). Campbell transported
Remsburg to the police station and adminis-
tered two Intoximeter tests which showed
BAC results of .15 and .16. Remsburg was
subsequently charged with DUI, a violation
of I.C. § 18–8004.

Remsburg filed a motion to suppress the
results of the Intoximeter tests, and on June

29, 1992, a hearing was held before a magistrate. At the close of the hearing, the magistrate ordered the results of the breath tests suppressed. The magistrate issued an Opinion and Order dated March 22, 1994, *nunc pro tunc* June 29, 1992. The magistrate held that Campbell had not "closely observed" Remsburg for the requisite fifteen minutes prior to administering the tests.

On July 2, 1992, the State appealed the magistrate's order to the district court. The district court elected to hear the matter in its appellate capacity, rather than conducting a trial de novo. *See* I.C.R. 54.17. After receiving briefing and hearing argument, the district court issued a decision reversing the magistrate's evidentiary ruling. Remsburg appeals from the district court's decision. I.A.R. 11(c)(10).

## II.

### ANALYSIS

The Department of Law Enforcement's training manual instructs an officer administering the Intoximeter 3000 test as follows: "Observe the subject closely for 15 minutes. During this time, the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other foreign substance in his mouth." *See* DEPARTMENT OF LAW ENFORCEMENT, THE OPERATOR'S TRAINING MANUAL FOR USING THE INTOXIMETER 3000 (Rev.1988); *State v. Bradley*, 120 Idaho 566, 568, 817 P.2d 1090, 1092 (Ct.App.1991). Remsburg first argues that the issue of whether a subject is closely observed is a question of fact, not a question of law, and that the district court, acting in its appellate capacity, erred by reversing an issue of fact already determined by the trial court. We disagree.

Upon an appeal from the magistrate division to the district court, not involving a trial de novo, the district court shall review the case on the record and determine the appeal as an appellate court in the same manner and upon the same standards of review as an appeal taken from the district court. I.C.R. 54.17. The district court, like this Court, should defer to the trial court's findings of fact when supported by substantial evidence, but exercises free review over questions of law. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990); *State v. Emory*, 119 Idaho 661, 662, 809 P.2d 522, 523 (Ct.App. 1991).

Compliance with the requisite standards and methods for administration of the Intoximeter test is a foundational prerequisite to having the test results admitted into evidence. *Bradley*, 120 Idaho at 568, 817 P.2d at 1092. Accordingly, resolution of this issue turns on the identification and construction of the regulations governing the administration of a breath test using an Intoximeter 3000. *Id.* This is a question of law over which the district court and this Court exercise free review. *Id.* In the case at bar, the district court did not make findings of fact different from those found by the magistrate. However, the district court did reach a different conclusion on whether those facts established that Campbell had closely observed Remsburg for the requisite fifteen-minute period. As stated in *Bradley*, this is a question of law over which the district court properly exercised free review.

Remsburg next argues that the district court erred in concluding that Campbell complied with the fifteen-minute observation requirement. At the suppression hearing, Campbell testified that he began his observation of Remsburg at 11:23 p.m. Twenty-two minutes later, at 11:45 p.m., Campbell administered the first Intoximeter test. Two minutes thereafter, he administered the second test. Campbell further testified that, during the seven minutes directly prior to administration of the first test, he programmed the Intoximeter, waited for the machine to warm up, and read the advisory form with Remsburg while standing next to her.[1] During this seven-minute period, Campbell did not have Remsburg under "continual direct visual observation." However, in response to the

---

1. In his Opinion and Order, the magistrate erroneously found that Remsburg was "seated next to or behind" Campbell. There is nothing in the record to support the magistrate's finding that Remsburg may have been seated behind Campbell. Instead, the record clearly indicates that Remsburg was seated next to Campbell.

prosecutor's question, "Did you closely observe her during ... the entire period of time?" Campbell replied, "Yes. As much as I could."

■ The magistrate held that the fifteen-minute observation period must take place immediately prior to administration of the Intoximeter test. He further concluded that because Campbell was engaged in programming the Intoximeter and reading the advisory form with Remsburg after the initial fifteen-minute observation period, for a seven-minute period immediately preceding the first test, he did not "closely" observe her for the requisite fifteen minutes.

■ We hold that the magistrate correctly ruled that the fifteen-minute observation period must occur immediately prior to the administration of the test. However, we further hold that the fifteen-minute requirement was complied with in this case. During the suppression hearing, Campbell testified that he observed Remsburg for at least fifteen minutes and, during this time, she did not burp, belch or vomit. Campbell further testified that he closely observed her as much as he could during the entire period of time Remsburg was at the police station. Such testimony was sufficient to establish that Campbell had closely observed Remsburg for the required amount of time.

In *State v. Utz,* 125 Idaho 127, 867 P.2d 1001 (Ct.App.1993), this Court held that an officer who left the area in which the subject was being detained had not closely observed the subject for the requisite time period. We are now urged to hold that a subject cannot be closely observed unless the observer stares unswervingly at the subject for the full fifteen-minute period. This, we decline to do. Authority from other jurisdictions supports our position.

In *Glasmann v. State, Dept. of Revenue,* 719 P.2d 1096, 1097 (Colo.App.Ct.1986), the court interpreted a regulation requiring that an officer "[c]losely and continuously observe the subject" for twenty minutes prior to the administration of a breath test. The officer in *Glasmann,* during the twenty-two minutes directly preceding the breath test, completed a custody report, a summons and a notice of

revocation in front of the defendant. The court concluded that the officer had complied with the regulation's requirement of close and continuous observation, and held that the regulation did not require in all cases that the officer "stare fixedly" at a test subject for twenty minutes. *Id.* In *State v. Smith,* 547 A.2d 69, 73 (Conn.Ct.App.1988), the court held that a regulation requiring "continuous observation" must be interpreted with reference to the purpose of the regulation. The court stated:

> The regulation, read in its entirety, indicates that the purpose is to determine whether the subject to be tested has ingested food, beverages, regurgitated or smoked. These activities adversely affect the accuracy of alcohol breath analysis. They are activities which do not require observation without cessation in order to determine if they have occurred.
>
> . . . .
>
> In light of the regulation's purpose, we do not interpret [it] to require that an officer fix his unswerving gaze upon a subject during each fifteen minute interval prior to administration of a breath test. Such an interpretation would not only be practically impossible to perform but would allow a subject to thwart compliance with the regulation simply by turning his head away from the observing officer. Where, as here, evidence shows that a defendant was in an officer's presence for at least a period of fifteen minutes and that the defendant did not ingest food or beverages, regurgitate or smoke, the requirement of "continuous observation" ... has been complied with.

*Id.* (citations omitted).

Another decision, *In re Ramos,* 155 Ill. App.3d 374, 108 Ill.Dec. 323, 508 N.E.2d 484 (1987), is quite similar to the instant case. In *Ramos,* standards required "continuous observation" of the subject for at least twenty minutes prior to collection of a breath specimen. 108 Ill.Dec. at 325, 508 N.E.2d at 486. The standards required that, during this period, the subject must not have ingested alcohol, food or drink or have regurgitated, vomited or smoked. The defendant in *Ramos* claimed that the test results should

have been suppressed because, for the six minutes directly prior to administration of the test, the trooper was resetting the breath-test machine.

The appellate court refused to strike the results, stating that "the six minutes where the trooper was concentrating on resetting the machine rather than simply standing and staring at the defendant do not indicate a serious failure to comply with the required standards and procedures." *Id.* The court explained that the defendant was seated in a hallway at the state highway patrol headquarters with no food nor water fountain nearby. Moreover, the defendant did not leave the area during the six minutes and the trooper noticed no smoke nor vomit in the area. The court also noted that the defendant took nothing out of his mouth prior to taking the test, that he was observed periodically as the trooper moved about the machine, and that the defendant was constantly in the peripheral vision of the trooper.

Other states with regulations similar to those in Idaho have refused to hold that an officer is required to stare fixedly at the subject for the mandatory time period. *See Gilbreath v. Municipality of Anchorage,* 773 P.2d 218 (Alaska Ct.App.1989); *Goode v. State,* 303 Ark. 609, 798 S.W.2d 430 (1990); *Tipton v. Com.,* 770 S.W.2d 239 (Ky.Ct.App. 1989); *State v. Taylor,* 781 S.W.2d 551 (Mo. Ct.App.1989); *Simpson v. State,* 707 P.2d 43 (Okl.Ct.App.1985); *State v. St. Jean,* 554 A.2d 206 (R.I.1989).

We agree with the reasoning of these cases. The Idaho Operator's Manual for the use of the Intoximeter 3000 does not require that the observer never take his eyes off the subject, only that the subject be observed closely. Such an interpretation comports with the purpose of the Manual, which is to "reduce the risk of invalid test results from various conditions which might occur after the time of the arrest." *Bradley,* 120 Idaho at 569, 817 P.2d at 1093. In this case, Officer Campbell was in the same room with Remsburg at all times and closely observed her for at least fifteen minutes directly preceding administration of the breath test. The fact that Campbell's attention was briefly diverted from staring at Remsburg while he read the advisory form to her and programmed the Intoximeter did not preclude his compliance with the mandatory fifteen-minute observation period.

## III.

### CONCLUSION

We hold that the question of whether the facts establish that an officer closely observed a subject for the requisite fifteen-minute period is a question of law. We further conclude that the officer in the instant case complied with the mandatory observation period.

Accordingly, we affirm the district court's opinion reversing the magistrate's order suppressing the test results. The case is remanded to the magistrate division of the district court for further proceedings.