988 P.2d 225

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Steven Raymond CARSON, Defendant–Respondent.**

No. 24682.

Court of Appeals of Idaho.

Sept. 20, 1999.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for appellant.

Dale L. Smith, Fruitland, for respondent.

LANSING, Judge.

The issue presented on this appeal is whether the prosecution presented an adequate foundation for the admission of breath test results where a portion of the required fifteen-minute observation of the defendant prior to administration of the test occurred while the defendant was being transported in a police car and the officer making the observation was driving the vehicle.

### FACTS

Idaho State Police Officer Dave Miller arrested Steven Raymond Carson for driving under the influence of alcohol, Idaho Code

§ 18–8004, and transported him to the Payette County Sheriff's Department to test his breath alcohol level using an Intoxilyzer 5000. Corporal Miller observed Carson for fifteen minutes before attempting to administer the test, as required by the operator's training manual for the Intoxilyzer 5000. Upon discovering that the machine would not calibrate, and therefore could not be used for the test, Miller transported Carson to the Washington County Sheriff's office, about thirteen miles away, to use the Intoxilyzer 5000 at that location. On arrival, Miller immediately administered the breath test without performing another fifteen-minute observation of Carson at the Washington County facility and without asking Carson if he had belched or vomited during the drive. This test showed a breath alcohol concentration of .19.

Carson filed a motion in limine to exclude evidence of the breath test. He asserted that an adequate foundation for admission of the test results could not be established because Officer Miller had not, immediately prior to administration of the test, performed the requisite fifteen-minute observation period to assure that Carson had not belched, regurgitated or placed anything in his mouth which could cause an inaccurate test. At the hearing on Carson's motion, Officer Miller testified that he had conducted the necessary observation while transporting Carson to the Washington County facility. According to Miller, he placed Carson in the backseat on the passenger side of the police cruiser and turned on a light over the rear door so that Carson was illuminated. He also handcuffed Carson's hands behind his back so that he could not place anything in his mouth. As Officer Miller drove to the Washington County Sheriff's office, he intermittently observed Carson in the rearview mirror and listened for any indication of belching or regurgitation. Miller testified that, because of the late hour, he encountered no other traffic on the road and his police radio was quiet throughout the trip. Under examination by Carson's counsel, however, Officer Miller acknowledged that during the drive rain was falling and the vehicle's windshield wipers were operating. He also acknowledged that he wore a hearing aid in his left ear.

The magistrate held the test results to be admissible, finding that there was sufficient compliance with the fifteen-minute observation requirement because Carson remained in Officer Miller's immediate presence and the officer was able to drive the vehicle and observe Carson simultaneously.

Carson was found guilty by a jury and thereafter appealed the denial of his motion in limine. The district court reversed, stating, "Although the officer testified concerning his ability to closely observe the defendant while driving, the infirmities of this process were adequately exposed during his examination." The State now appeals from the district court's decision.

## ANALYSIS

■ The issue presented is whether the officer's actions constitute compliance with foundational prerequisites set out in the operator's manual for the Intoxilyzer 5000. This is a question of law over which we exercise free review. *State v. Remsburg,* 126 Idaho 338, 339, 882 P.2d 993, 994 (Ct.App. 1994); *State v. Bradley,* 120 Idaho 566, 568, 817 P.2d 1090, 1092 (Ct.App.1991).

Pursuant to I.C. § 18–8004(4), the Idaho Department of Law Enforcement is charged with promulgating standards for administering tests for breath alcohol content. The statute provides that when it is shown that the test was administered by a method approved by the Department, the results are admissible without the necessity of further evidence of the reliability of the testing procedure.[1] The Department of Law Enforce-

---

1. Idaho Code § 18–8004(4) states in part:
   Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho department of law enforcement or by a laboratory approved by the Idaho department of law enforcement under the provisions of approval and certification standards to be

   set by that department, or by any other method approved by the Idaho department of law enforcement. Notwithstanding any other provisions of law or rule of court, the results of any test for alcohol concentration ... by any ... method approved by the Idaho department of law enforcement shall be admissible in any proceeding in this state without the necessity

ment has approved the Intoxilyzer 5000 as a method of determining breath alcohol content and has set out in an operator's training manual for that machine the approved methodology for administering the test. The pertinent portion of the manual instructs:

> Observe the subject for 15 minutes. During this time, the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other substance in the mouth. If belching or vomiting does occur or something is found in the mouth, wait an additional 15 minutes.

The State contends that the magistrate court was correct in finding that Corporal Miller complied with the observation period by listening for sounds and visually observing Carson intermittently through the rear view mirror of his police car during the drive from the Payette County Sheriff's office to the Washington County Sheriff's office. We cannot agree.

It is apparent from the manual that the observation period is required in order to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. It is a precaution that is necessary to insure the validity of the test results. Although the observation requirement does not mandate that an officer "stare fixedly" at a test subject for the full fifteen-minute period, *Remsburg*, 126 Idaho at 340, 882 P.2d at 995, the level of surveillance must be such as could reasonably be expected to accomplish the purpose of the requirement.

In this case, during the trip to the Washington County Sheriff's office, Officer Miller's attention necessarily was devoted primarily to driving. He visually observed Carson only intermittently through glances at the rearview mirror. Evidence presented at the motion hearing and common experience tell us that the officer's ability to use his hearing as a substitute for visual observation was impeded by noise from the automobile engine, tires on the road surface, rain and windshield wipers. There is also evidence that the officer's powers of aural observation were compromised by a hearing impairment. In our view, the State's foundational evidence did not demonstrate a mode of observation that would be likely to detect belching, regurgitation into the mouth, or the like. The circumstances of this case are not comparable to those presented in *Remsburg, supra,* where we held that an officer need not maintain constant visual contact with the subject for fifteen minutes.[2] Although in that case the officer's attention was occasionally diverted from the subject while he read an advisory form to her and programmed the test equipment, there was no evidence that other factors impeded the officer's ability to hear or smell. In the instant case, by contrast, the evidence shows that numerous sources of noise, the officer's hearing impairment, and his position facing away from Carson, would substantially impair his ability to supplement his visual observation with his other senses to insure that nothing occurred that would affect the validity of the test. Because the foundational requirements for admission of the breath test were not established in this case, the evidence should have been excluded.

Accordingly, we affirm the decision of the district court, which reversed the magistrate's denial of Carson's motion to exclude the breath tests from evidence. The judgment of conviction is vacated, and this case is remanded for further proceedings.

Chief Judge PERRY concurs.

Judge SCHWARTZMAN dissents without opinion.

---

of producing a witness to establish the reliability of the testing procedure for examination.

2. In *Remsburg*, the Intoximeter 3000 was used, which preceded the Intoxilyzer 5000. The prescribed procedures for use of the Intoximeter 3000 required that the officer "closely observe," the test subject for fifteen minutes, as compared with the requirement for the Intoxilyzer 5000 that the officer "observe" the subject.