494 P.2d 146

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Patrick L. TURNER, Defendant-Appellant.**

**No. 10925.**

Supreme Court of Idaho.

March 1, 1972.

Theodore V. Behm and Edgar R. Frachiseur, Buhl, for defendant-appellant.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

This is an appeal from a judgment of conviction entered pursuant to a jury verdict finding appellant guilty of operating a motor vehicle while under the influence of intoxicating liquor, in violation of I.C. § 49–1102.[1] The verdict was based in part on evidence, admitted over motion to suppress, showing the positive results of a "Mobat" chemical breath test authorized by I.C. § 49–352.[2] Appellant assigns error to admission of this evidence, arguing that it was obtained by methods violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and of similar language in Article I, Section 13, of the Idaho Constitution. Appellant also contends that police officers "pressured" him to take the test when his physical condition prevented him from making a knowing and intelligent waiver of his statutory right to refuse.

1. *"Persons under the influence of intoxicating liquor or of drugs.*—(a) It is unlawful and punishable as provided in paragraph (d) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.
(b) In any criminal prosecution for a violation of paragraph (a) of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:
1. If there was at that time 0.10 per cent or less by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;
2. If there was at that time more than 0.10 per cent by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor. * * * "
2. *"Chemical tests of operator.*—Any person who operates a motor vehicle or motor-

I

On the evening of August 22, 1970, appellant attended a "bachelor party" at which he consumed several cups of beer. He departed the gathering on a friend's motorcycle and drove along the edge of a dark county road at thirty-five to forty miles per hour. He swerved into a roadside ditch at 10:45 p. m. Help arrived in the form of police officer Duane W. Owen at 11:45 p. m. Owen found appellant lying in the ditch, bleeding from the mouth, and talking "somewhat irrationally." At trial Owen testified that appellant then "seemed to be in a very incoherent state and seemed to be quite dazed, that he smelled quite strongly of alcoholic beverages," and that his eyes were bloodshot and watery. Owen called an ambulance, and notified fellow officer William F. Green to meet the ambulance at Magic Valley Hospital in Twin Falls in order to observe appellant's condition. Enroute to the hospital, the am-

cycle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine or saliva for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition and in accordance with the rules and regulations established by the police force of which he is a member. If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the commissioner shall suspend his license or permit to drive and any nonresident operating privilege for a period of 90 days, provided, however, the commissioner shall grant such person an opportunity to be heard but a license, permit or nonresident operating privilege may, upon the basis of a sworn report of the police officer that he had reasonable grounds to believe such arrested person to have been driving in an intoxicated condition and that said person had refused to submit to such test be temporarily suspended without notice pending the determination upon any such hearing. * * * "

bulance attendant noticed that appellant was spitting blood and that he was "dazed and incoherent and smelled of alcohol."

At the hospital, appellant received pain-killing injections in the course of treatment for multiple lacerations of the head and face. As he was attended by the hospital staff, he sat quietly, with his hands shaking. He rose occasionally to spit blood in a sink, and approached the telephone several times before using it to call his wife. The two police officers at that time concluded that appellant had been driving under the influence. When initial treatment of the injuries was completed, they announced the arrest, requesting that appellant take the "Mobat" breath test. A lengthy colloquy ensued, extending thirty to forty-five minutes, during which appellant repeatedly asked what would happen to him if he took, or refused to take, the test. Officer Owen later testified that appellant appeared "somewhat more rational" at this point than at the scene of the accident. The officers explained that if he took the test, the results might be used in court against him; and that if he refused, the Commissioner of Law Enforcement could suspend his operator's license. Owen, according to the testimony of his partner, also advised appellant that he did not have to answer questions and that he was entitled to have an attorney present. Throughout the discussion appellant "didn't act like he wanted to take [the test]," but when the "Mobat" device finally was handed to him at 1:30 a. m., he blew into the balloon. No physical coercion was employed.

■ The test revealed a blood alcohol content of 0.10%. Since alcohol content

decreases at the rate of 0.01% to 0.02% per hour after the first forty-five to sixty minutes, the state's chemical analyst testified that 0.10% was less than the "peak" alcohol content reached earlier that night. Properly instructed on the presumption established by I.C. § 49–1102,[3] the jury returned a guilty verdict, and judgment of conviction was entered accordingly.

## II

■ In Rochin v. People[4] the United States Supreme Court reversed judgment of conviction in a narcotics case based on evidence obtained by police officers, acting without valid arrest or search warrants, who unlawfully broke and entered defendant's home, physically assaulted him in his bedroom as he swallowed morphine tablets, and subsequently forced him to submit against his will to a stomach pump treatment which recovered the drugs. The Court ruled that admission of evidence obtained by methods which "shocked the conscience," violated the "community sense of fairness," and "did more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically,"[5] violated the defendant's Fourteenth Amendment right to due process in a state prosecution. That ruling narrowed the scope of Wolf v. People of State of Colorado,[6] in which the Court previously had held that the Fourteenth Amendment did not forbid admission in a state prosecution of evidence obtained by unreasonable search and seizure.

Of course, decisions in Mapp v. Ohio[7] and Malloy v. Hogan[8] have since opened state prosecutions to Fourth and Fifth Amendment attack.[9] But application of

---

3. *See note 1, supra.*

4. 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951).

5. 342 U.S. at 172, 72 S.Ct. at 209.

6. 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

7. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

8. 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

9. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court rejected those attacks on the taking of a blood sample from a defendant

the Fourteenth Amendment due process clause, by itself, remains limited. In Irvine v. People of State of California [10] the Court explained that it was the coercive physical assault which led to reversal in *Rochin*. In Breithaupt v. Abram [11] the Court held that withdrawal of a blood sample from an unconscious defendant in the hospital, in order to perform a blood alcohol test, did not offend the "community sense of fairness" as did the police conduct in *Rochin*. More recently, in Schmerber v. California,[12] the Court upheld administration of a blood alcohol test where the defendant knowingly withheld consent. The Court allowed that

"[i]t would be a different case if the police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." [13]

The record in this appeal discloses no such conduct. Neither do the actions of officers Owen and Green bear any resemblance to the improprieties condemned in *Rochin*. Rather, the facts of this case closely parallel *Breithaupt* and *Schmerber*. Appellant cites State v. Kroening,[14] holding that extraction of blood from a semi-conscious defendant without requesting or obtaining his consent violated the Fourth and Fourteenth Amendments. That case may be distinguished on its facts and by the lack of a valid arrest prior to the blood extraction. In any event, the decision preceded *Breithaupt* and *Schmerber*, and no longer appears to carry great weight.

Appellant also invites attention to United States v. Willis,[15] and United States v. Townsend,[16] cases in which physical assaults by the police rendered the evidence obtained inadmissible under the Fourth and Fourteenth Amendments. Both are distinguished from this case by the physical assaults. Finally, appellant relies on State v. Merrow.[17] However, that decision held only that the trial judge must make a preliminary finding of voluntariness before admitting evidence of a breath test, because the Maine statute, unlike I.C. § 49–352, contains no implied consent provision and poses no obligation on the part either of the arresting officer or the accused. Appellant's authorities fail to support an attack based on the due process clauses of either the Fourteenth Amendment or Article I, Section 13.

---

without his consent. The Court limited Fifth Amendment protection to evidence of a testimonial or communicative nature, not to real evidence of defendant's physical condition. Acknowledging that a Fourth Amendment issue is raised by any invasion of a defendant's person, the Court held the blood test not unreasonable because (1) the facts which established probable cause for arrest also suggested the likely positive results of the blood test; (2) the constraints of time due to natural destruction of the evidence as defendant's body eliminated the alcohol made appropriate a test conducted without a search warrant; and (3) the test itself was reasonable, involving little trauma, taken in a safe hospital environment, and producing accurate results. All three requirements are satisfied in the present case. The symptoms of intoxication displayed at the scene of the accident and the hospital, which adequately established probable cause for arrest, also suggested the likely positive results of the "Mobat" test. Time was clearly of the essence, for nearly three hours had elapsed

since the accident, and the alcohol content of defendant's blood was steadily decreasing. The test itself was plainly reasonable, involving even less trauma than a blood sample, conducted in a hospital, and producing results estimated by the Department of Health chemist to reveal actual blood alcohol content within 0.01% (one hundredth of one percent).

10. 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954).

11. 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); *see also* State v. Ayers, 70 Idaho 18, 211 P.2d 142 (1949).

12. *See* note 9, *supra*.

13. 384 U.S. at 760, note 4, 86 S.Ct. at 1830.

14. 274 Wis. 266, 79 N.W.2d 810 (1956), reh. den. 80 N.W.2d 816 (1957).

15. 85 F.Supp. 745 (S.D.Cal.1949).

16. 151 F.Supp. 378 (D.D.C.1957).

17. 161 Me. 111, 208 A.2d 659 (1965).

## III

The facts similarly fail to show that appellant was prevented from making a knowing and intelligent waiver of his statutory right to refuse the test. Because I.C. § 49–352 contains an implied consent clause, the accused must clearly decline the test in order to exercise his right under the statute. This Court declared in State v. Bock,[18] that "if he neither refuses nor consents, expressly, the test may be made." Moreover, waiver of a constitutional right, for which high standards of proof are exacted,[19] is not at issue here.

The record shows that appellant was trembling, suffering some shock and pain from the accident, and arguably affected by pain-killing shots administered in treatment of his wounds.[20] On the other hand, appellant appeared "somewhat more rational" at the hospital, inquired repeatedly into his rights, later testified at trial that he recalled the discussion, and finally blew into the balloon when it was offered to him. No physical compulsion was employed. The evidence indicates that appellant was "pressured" not by the police officers, who made no threats or promises, but by the statute itself, which forces the hard choice between taking the test or losing one's operator's license. The dilemma undoubtedly proved distressing, but that does not detract from the knowing and intelligent nature of appellant's decision to take the test. Because, as noted previously, there is no constitutional right to refuse the test, the statute itself does not impermissibly deter the exercise of any such right. The results of that test properly were admitted.

The judgment of conviction is affirmed.

McFADDEN, DONALDSON, and SHEPARD, JJ., and MAYNARD, D. J., concur.

18. 80 Idaho 296, 308, 328 P.2d 1065, 1073 (1958); *accord,* Mills v. Swanson, 93 Idaho 279, 460 P.2d 704 (1969).

19. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

20. In addition, the results of the breath test clearly show that appellant was still under the influence of alcohol; but I.C. § 49–352 would be reduced to absurdity if intoxication were held to vitiate consent to a chemical test of blood alcohol content.