857 P.2d 618

**In the Matter of the Suspension of the Driver's License of Daniel Edward PANGBURN.**

**Daniel Edward PANGBURN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 20025.

Supreme Court of Idaho, Boise, March 1993 Term.

Aug. 2, 1993.

Rettig, Rosenberry, Lovan & Pangburn, Caldwell, for petitioner-appellant. Bob E. Pangburn argued.

Larry EchoHawk, Atty. Gen.; Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth argued.

JOHNSON, Justice.

This is a driver's license suspension case. We conclude that a motorist who is requested to submit to evidentiary testing for concentration of alcohol, or for the presence of drugs or other intoxicating substances, must be allowed to give delayed assent to the testing, after first having refused to submit, when testing equipment and personnel are reasonably available. In this case, although the motorist gave delayed assent to submit to the testing while equipment and personnel were reasonably available, the motorist failed to carry the burden of proving that the delay produced by the original refusal would not have caused the outcome of the test to be materially affected.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

On June 29, 1991, Officer Ryan of the Twin Falls Police Department arrested Daniel Pangburn for driving while under the influence and transported Pangburn to Twin Falls County Jail. Ryan asked Pangburn to take a breath test at 2:10 a.m. Pangburn refused to take the test without first consulting with his attorney. Ryan and Pangburn signed an advisory form containing a statement that Pangburn could change his mind and take the test within one hour, provided Ryan had not left the jail and the testing equipment was available. Approximately forty-five minutes later, after speaking with his attorney, Pangburn consented to take the breath test. Ryan had left the jail at approximately 2:35 a.m. to have breakfast and refused to come back when he received a call from the dispatcher at 2:55 a.m., which informed him that Pangburn wanted to take the test. Ryan testified at the suspension hearing

that it would have taken him five minutes to return to the jail and that this would not have left adequate time to administer the test within the one hour provided in the advisory form. Another officer on duty at the jail, Corporal Brady of the Twin Falls County Sheriff's Office, was qualified to administer the test, but did not administer the test to Pangburn.

On July 31, 1991, a hearing was held before a magistrate judge in order to determine whether Pangburn had refused to take the breath test. The magistrate judge found that personnel were not available to administer the test when Pangburn consented because Ryan, as the officer who was responsible to administer the test, had left the jail. Although Brady was qualified to give the test, the magistrate judge ruled that no evidence showed that anyone requested that Brady administer the test or that Brady was authorized to give the test without the request. The magistrate judge noted that Ryan had not left until forty minutes after Pangburn initially refused to take the test. The magistrate judge also ruled that Pangburn had not carried his burden of proving that a forty to fifty-minute delay would not have materially altered the test results. The magistrate judge concluded that Pangburn had refused to take the test and ordered the suspension of Pangburn's driver's license for 180 days. On appeal, the district judge affirmed. Pangburn then appealed to this Court.

## II.

### THE TESTING EQUIPMENT AND PERSONNEL WERE REASONABLY AVAILABLE WHEN PANGBURN GAVE DELAYED ASSENT TO BE TESTED.

Pangburn asserts that the magistrate judge should not have rejected his delayed assent on the ground that testing equipment and personnel to administer the test were not readily available. We agree.

I.C. § 18–8002(4) directs the trial court to suspend driving privileges of a driver who refuses an officer's request to submit to evidentiary tests. Our Court of Appeals has ruled that if a motorist initially declines to take a blood-alcohol test, but reconsiders and gives a timely and unequivocal assent, the motorist cannot be deemed to have refused the breath test. *In re Smith*, 115 Idaho 808, 770 P.2d 817 (Ct. App.1989). The Court of Appeals concluded in *Smith* that delayed assent will be deemed timely only if: (1) the assent is given while the motorist is still in police custody; (2) the assent is given when testing equipment and personnel are readily available; and (3) the delay produced by the initial declination would not cause the outcome of the test to be materially affected. The motorist has the burden of proving these requirements by a preponderance of the evidence. *Id.* at 812, 770 P.2d at 821.

The Court of Appeals accepted this flexible rule for delayed assent because "it better serves the public interest in obtaining scientific information about the blood-alcohol levels of motorists accused of driving under the influence." *Id.* We agree with this rationale, and because of it, we accept the requirements contained in *Smith*, except we modify the second requirement. We conclude that the second requirement should allow delayed assent to be given when testing equipment and personnel are *reasonably* available. This amendment will facilitate securing testing results in more cases and is consistent with the objective of serving the public interest. To restrict the opportunity for delayed assent to occasions when equipment and personnel are *readily* availa'.le makes it possible for an officer to refuse to administer the test, even though both equipment and personnel are *reasonably* available.

In this case, both equipment and personnel were reasonably available. Brady was qualified to operate the machine and could have performed the test. Also, Ryan had told Pangburn that he had one hour to change his mind and had Pangburn sign a form indicating that he had one hour. Ryan left the jail before the hour had expired and testified that he could have returned within fifty minutes of the initial request, but that he refused to return. Therefore, Pangburn met the second *Smith* requirement as we have modified it.

## III.

## PANGBURN DID NOT PROVE THAT THE DELAY WOULD NOT CAUSE THE OUTCOME OF THE TEST TO BE MATERIALLY AFFECTED.

Pangburn asserts that he met the burden of proving the third *Smith* requirement. We disagree. We conclude that the magistrate judge correctly determined that Pangburn did not establish that the delay in taking the test did not cause the outcome of the test to be materially affected.

Pangburn asks us to fashion a per se rule providing that delay in assenting for a specified period of time would satisfy the third *Smith* requirement. Pangburn premises this position on statements by this Court in *State v. Turner*, 94 Idaho 548, 494 P.2d 146 (1972) (cited in *Smith*) and *State v. Sutliff*, 97 Idaho 523, 547 P.2d 1128 (1976). The portion of *Turner* to which Pangburn refers deals with the presumption of driving under the influence provided in earlier versions of our statutes. In discussing the presumption, the Court said:

> The test revealed a blood alcohol content of 0.10%. Since alcohol content decreases at the rate of 0.01% to 0.02% per hour after the first forty-five to sixty minutes, the state's chemical analyst testified that 0.10% was less than the "peak" alcohol content reached earlier that night. Properly instructed on the presumption established by I.C. § 49–1102, the jury returned a guilty verdict, and judgment of conviction was entered accordingly.

94 Idaho at 550, 494 P.2d at 148 (footnote omitted).

In *Sutliff*, the Court considered the admissibility of blood-alcohol test results:

> Respondent argued successfully at trial that the possibility that his blood alco-

hol was lower at the time of the accident than at the time of extraction of the samples rendered the results inadmissible absent a witness qualified to extrapolate the results back to the time of the accident. We disagree. At the least, the test results are relevant to corroborate witnesses' testimony of observed physical manifestations of intoxication. The lapse of time prior to the extraction of samples goes to the weight to be afforded the test results and not to their admissibility.

97 Idaho at 524, 547 P.2d at 1129.

Neither of these cases deals with the refusal of a driver to take the test prescribed by I.C. § 18–8002(1), nor do they support a per se rule allowing a driver a specified period of time to give delayed assent.

The third *Smith* requirement is part of a flexible approach to allow delayed assent and balances the salutary objective of obtaining a blood-alcohol test result against the complexity created by further delay in testing. The Court spoke of this complexity in *Sutliff*:

> Naturally, samples of blood, breath or other bodily substances obtained at the time of the accident would be ideal. However, extraction of the samples often requires a trip to a hospital or other medical facility and the exigencies of accidents may require a further delay. Frequently this works to the advantage of the defendant since the blood alcohol level is generally recognized to decline over time at a fairly predictable pace. However, as respondent points out, the interval of time between the offense and the extraction of the sample does not always work to the advantage of the defendant since the decline in blood alcohol does not begin for 45 to 60 minutes after the last drink.

*Id.*

This complexity dictates that in considering whether to allow delayed assent, we must require the motorist to carry the burden of proving that the delay would not materially affect the outcome of the test. Otherwise, the motorist and not the officer will determine when the test is administered. This would be contrary to the provisions and intent of I.C. § 18–8002.

In this case, the magistrate judge correctly ruled that Pangburn did not carry this burden.

## IV.

## CONCLUSION.

We affirm the suspension of Pangburn's driver's license.

We award costs on appeal to the state.

McDEVITT, C.J., and WOODLAND, J., Pro Tem, concur.

BISTLINE, Justice, concurring in part, dissenting in part.

I fully concur with the majority's adoption and adaptation of the *Smith* test as fair and as consistent with both the spirit and letter of I.C. § 18–8002.

I do question the majority's application of the third prong of the *Smith* test—that is, proving the delay would not cause the outcome of the test to be materially affected. By pointing to the language in *State v. Turner*, 94 Idaho 548, 494 P.2d 146 (1972), and *State v. Sutliff*, 97 Idaho 523, 547 P.2d 1128 (1976), both at trial and on appeal, Pangburn has met the burden of proving that requirement. Although I recognize the need to discourage people from delaying taking the breath tests so that the results are altered, I see no need to require defendants, some of them perhaps indigent, to prove by expert testimony that which this Court has already recognized to be true. If the prosecution wishes to rebut the information in *Turner* and *Sutliff* and thereby rebut a defendant's prima facie case, it may produce expert testimony on the point.

Finally, apart from whether Pangburn had met the requirements of the *Smith* test, it was unfair for the police to initially tell Pangburn that he may, on further reflection during the allotted sixty minutes,

decide to let the test be administered, only to then deny him that opportunity.

In conclusion, although this justice heartily embraces the *Smith* test, he cannot concur in the affirmance of Pangburn's conviction.

TROUT, Justice, concurring in the result and dissenting in part.

I concur in the result reached by the Court which affirms the suspension of Pangburn's driver's license. I must, however, respectfully dissent from that portion of the Court's opinion which provides that a driver must be allowed to give a delayed assent to a blood-alcohol test after first refusing the test.

The statutory provisions in the area of driving under the influence and testing for alcohol are not models of clarity in all respects and have been the source of much judicial analysis since their substantial amendment in 1983. I cannot accept, however, that the provisions of Section 18–8002 leave doubt about the proper procedure to be followed at the time the driver is offered the test for alcohol concentration. That statute, in pertinent part, provides:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol....

(2) Such person shall not have the right to consult with an attorney before submitting to such evidentiary testing.

(3) At the time evidentiary testing for concentration of alcohol ... is requested, the person shall be informed that if he refuses to submit to ... evidentiary testing:

(a) His driver's license will be seized by the peace officer and a temporary permit will be issued ...;

(b) He has the right to request a hearing within seven (7) days to show cause why he refused to submit to ... evidentiary testing;

(c) If he does not request a hearing or does not prevail at the hearing, his driver's license will be suspended ...;

(d) After submitting to evidentiary testing he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) If the motorist refuses to submit to ... evidentiary testing after the information has been given in accordance with subsection (3) above:

(a) His driver's license or permit shall be seized by the peace officer and forwarded to the court ...;

(b) A written request may be made within seven (7) calendar days for a hearing before the court.... The hearing shall be limited to the question of why the defendant did not submit to ... evidentiary testing, and the burden of proof shall be upon the defendant; the court shall suspend all his driving privileges ... unless it finds that the peace officer did not have legal cause to stop and request him to take the test or that the request violated his civil rights;

(c) If a hearing is not requested ... the court shall suspend his driving privileges....

The clear meaning of the statute is that: (1) a person who drives in Idaho is deemed to have consented to evidentiary testing for alcohol concentration; (2) a driver does not have the right to consult with an attorney before testing; (3) at the time evidentiary testing is requested, a driver shall be informed of the consequences of refusing to submit to an evidentiary test for alcohol concentration; and (4) if a driver refuses to submit to evidentiary testing after being informed of the consequences of such refusal, the driver's driving license shall be seized and the driver's driving privileges shall be suspended unless the arresting officer did not have legal cause to stop the driver and request evidentiary testing or unless the testing request violated the driver's civil rights.

Despite that clear mandate, the Court of Appeals in *In re Smith*, 115 Idaho 808, 770 P.2d 817 (Ct.App.1989), engrafted a "flexible rule" to permit the driver to later change his mind and agree to the test.

This rule has created the type of confusion we now see embodied in the case before us.[1] The Court of Appeals' judicial interpretation of I.C. § 18–8002 is contrary to our stated policy of giving statutes their plain meaning and avoiding subtle refinements when the language of the statute is clear and unequivocal. *E.g., George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990).

For this Court to accept this refinement of the statute means that we now leave to law enforcement officers and magistrates the subjective task of determining when "testing equipment and personnel are reasonably available." The obvious consequence of a police officer not remaining available for testing after a driver initially refuses evidentiary testing is that it invites drivers suspected of driving under the influence, such as Pangburn, to challenge whether an officer or testing equipment was "reasonably available." Furthermore, even assuming a police officer who has left the police station after the suspected driver refused testing can be summoned back to the station, this still invites a challenge to the validity of a breath-alcohol test unless the driver was continuously observed. *See State v. Bradley,* 120 Idaho 566, 817 P.2d 1090 (Ct.App.1991). In the rural areas of Idaho where additional personnel are not readily available, I cannot help but think that the practical effect of this is that police officers, at a minimum, will be forced to observe continuously a driver suspected of intoxication for one hour after the driver refuses to submit to evidentiary testing.

Given the clear meaning of the statute and the appreciable burden this new rule places upon law enforcement, our adoption of this creative interpretation of I.C. § 18–8002 is totally inappropriate. Accordingly, I concur in the Court's decision affirming Pangburn's license suspension but I dissent from the Court's conclusion that a motorist suspected of intoxication who refuses to submit to evidentiary testing must be allowed to give delayed assent to testing.

---

1. In this case a portion of the advisory form signed by Pangburn followed in substantial part the language from *In re Smith,* including:

   7. If you refuse any of the tests I have asked you to take, you may change your mind and take the tests **only if** you are still in custody, **if** I have not left this location, **and if** the testing equipment is still available. You may not take the tests if more than one hour has elapsed between the time I asked you to take the tests and the time you changed your mind. This language was apparently asserted in reaction to *Smith* because nowhere in Section 18–8002 is it suggested that the driver must be advised of this additional time within which to change his mind.