# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 39949/39994

| | |
|---|---|
| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF WILLIAM RICHARD TROTTIER<br>------------------------------------------------------------ | 2013 Opinion No. 34<br><br>Filed: June 5, 2013<br><br>Stephen W. Kenyon, Clerk |
| WILLIAM RICHARD TROTTIER,<br><br>    Petitioner-Respondent,<br><br>v.<br><br>STATE OF IDAHO, TRANSPORTATION DEPARTMENT,<br><br>    Respondent-Appellant. | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Order vacating hearing officer's decision to uphold the suspension of driver's license, <u>reversed</u>; order vacating lifetime disqualification of commercial driving privileges, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Boise, for appellant. Edwin L. Litteneker argued.

Walker & Pattinson, Moscow, for respondent. John W. Walker argued.
_____

GRATTON, Judge

In a consolidated appeal, the Idaho Transportation Department (ITD) appeals from the district court's decision upon judicial review vacating the hearing officer's order suspending William Richard Trottier's driver's license and order disqualifying Trottier's commercial driver's license (CDL) after he failed a blood alcohol concentration test. ITD claims the hearing officer's decision to sustain Trottier's license suspension was supported by substantial and competent evidence. Trottier raises additional issues on appeal, including: (1) whether he received the mandatory fifteen-minute monitoring period prior to administration of the breath test in accordance with the Idaho State Police's Standard Operating Procedure (SOP) and Idaho

1

law; and (2) whether the commercial license disqualification proceeding violated his due process rights.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2011, Idaho State Police Trooper Schwecke observed a vehicle turn right onto U.S. Highway 95. The trooper activated his emergency overhead lights and conducted a traffic stop for an illegal right turn. Idaho State Police Corporal Baldwin was with the trooper and assisted in the stop.

Upon approaching the vehicle and informing the driver of the reason for the stop, Trooper Schwecke smelled the odor of an alcoholic beverage coming from inside the vehicle. The driver, later identified as Trottier, had glassy and bloodshot eyes. After Trottier admitted to having a couple of beers, the trooper asked him to perform some field sobriety tests. Trottier subsequently failed the field sobriety tests and was requested to submit to a breath test. The breath test samples showed a result of .148 and .144, and Trottier was arrested for DUI. Due to his failure of the breath test, ITD later served Trottier with a notice of administrative license suspension (ALS) and a notice of lifetime disqualification of his CDL, pursuant to Idaho Code §§ 18-8002A and 49-335, respectively.

Trottier requested an ALS hearing, which was held on September 26, 2011. On September 28, 2011, the ALS hearing officer issued his findings of fact and conclusions of law and order upholding the license suspension. Trottier filed a petition for judicial review on October 6, 2011, and requested a stay. On the same date, the district court entered an order for stay pending appeal.

Trottier also requested a hearing to contest his CDL disqualification, which was scheduled for October 11, 2011. On October 6, 2011, Trottier submitted a request with ITD to vacate the CDL disqualification until after the district court had an opportunity to decide the petition for judicial review regarding his license suspension. With the request, Trottier submitted the stay order that was granted by the district court concerning the ALS. The request was denied. Prior to the CDL disqualification hearing, Trottier submitted ten exhibits for the CDL hearing officer to consider, all of which related to his challenge to the validity of the breath test. The hearing officer refused to consider the exhibits. After hearing argument from the parties, the hearing officer ultimately sustained the lifetime CDL disqualification in findings of fact and

2

conclusions of law and order dated October 13, 2011. On October 28, 2011, Trottier filed a petition for judicial review and an ex parte motion for stay. On the same day, the district court entered an order for stay pending appeal.

The district court consolidated the ALS and CDL petitions for judicial review. Trottier raised several issues before the district court. However, the district court determined that there was not substantial and competent evidence in the record to support the hearing officer's finding that the trooper had legal cause to stop Trottier. The district court then vacated the ALS and CDL disqualification without considering Trottier's other issues. ITD timely appealed.

## II.

## ANALYSIS

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998);

3

*Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

The administrative license suspension statute, I.C. § 18-8002A, requires that ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer, designated by ITD, to contest the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds are:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The burden of proof at an ALS hearing is on the individual requesting the hearing. *Kane*, 139 Idaho at 590, 83 P.3d at 134.

## A.    Administrative License Suspension

ITD appeals from the district court's determination that the trooper did not have legal cause to stop Trottier. In addition, while the district court did not reach the issue, Trottier

4

contends that the suspension should not have been sustained because the trooper did not comply with the fifteen-minute monitoring period. We will address each in turn.

### 1. Legal cause

ITD claims that the hearing officer's finding that the trooper had legal cause to stop Trottier's vehicle was supported by substantial evidence in the record. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

The hearing officer, in the findings of fact and conclusions of law and order, addressed the question of whether legal cause existed to stop Trottier's vehicle. There, the hearing officer found:

1. Officer Schwecke stopped the vehicle driven by Trottier on September 3, 2011 at approximately 0214 hours in Latah County, Idaho for an illegal turn, in violation of Idaho Code §49-644, and for failing to maintain its lane of travel, in violation of Idaho Code, §49-637.
2. Counsel for Trottier argues that no traffic violation can be discerned from a viewing of the driving on video recording. However, only part of the driving pattern occurs within view of the camera on the recording. Additionally, what can be seen appears to be a wide turn, crossing over the dashed lane dividers. The paint on the dashed lane dividers is faded but still discernible.
3. Officer Schwecke had legal cause to stop the vehicle driven by Trottier.

Idaho Code § 49-644, in pertinent part, states: "The driver of a vehicle intending to turn shall do so as follows: Both the approach for a right turn and the right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." Idaho Code § 49-637, in pertinent part, states:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

The district court, on judicial review, vacated the license suspension. The district court held that the findings of the hearing officer were not supported by substantial and competent evidence in the record because the trooper did not have legal cause to stop Trottier. As noted, this Court "reviews the agency record independently of the district court's decision." In this case, no testimony was presented to the hearing officer. The agency record thus consists of the trooper's probable cause affidavit and the videotape from the trooper's vehicle. With that limited record, Trottier asked the district court and this Court, on review, to simply look at the videotape and decide for ourselves if a violation is shown. On the other hand, ITD submits that in such case the driver fails in his burden because there is nothing presented with which to challenge the hearing officer's determination other than simply to re-weigh the evidence, which our standard of review precludes, and, moreover, the reviewing court is to look at the entire record from the eyes of the hearing officer.

The reviewing court, including the district court on intermediate appeal, does not substitute its judgment for that of the agency as to the weight of the evidence presented. The court instead defers to the agency's findings of fact unless they are clearly erroneous. The agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Marshall*, 137 Idaho at 340, 48 P.3d at 669. We decline the invitation to simply substitute our view of the evidence for that of the hearing officer. However, we still review the evidence in the record to determine whether the hearing officer's factual findings are supported by substantial and competent evidence. Clearly erroneous factual findings are not entitled to our deference.

6

As noted, the hearing officer determined that Trottier made a wide turn and crossed the centerline between the lanes. The district court stated that Trottier made the right turn in "as practical as possible way" and "I don't see him driving over the centerline." Again, there is no oral testimony in this case. The trooper indicated in his affidavit that Trottier made an illegal right turn and straddled the centerline. The videotape is the only other evidence. Based upon the record consisting of the affidavit and the videotape, we cannot say that the hearing officer's findings are clearly erroneous and, therefore, subject to no deference.

The nighttime videotape is somewhat difficult to discern. A vehicle was parked on the right curb near where Trottier began his right turn. It is hard to determine how far from the rear of the vehicle parked along the curb Trottier was when he began and conducted the right turn. Obviously the nearer the vehicle, the more Trottier would need to travel to the left of the vehicle and into the lane for clearance. On the other hand, being farther from the vehicle would allow a normal turn into the lane without additional clearance for the vehicle. Additionally, we cannot say that at least a portion of Trottier's vehicle did not touch or cross over the dividing line of the lanes of travel.

The hearing officer, based upon the trooper's affidavit and the videotape, determined that the trooper possessed legal cause for the stop. We cannot say that the hearing officer's factual findings are clearly erroneous. Thus, the hearing officer's determination that the trooper possessed legal cause to stop Trottier is supported by substantial and competent evidence in the record. Trottier did not sustain his burden in demonstrating a lack of legal cause for the stop.

### 2. Fifteen-minute monitoring period

Trottier claims the hearing officer's finding that Trooper Schwecke complied with the fifteen-minute monitoring period was not supported by substantial and competent evidence in the record. Trottier argues that the trooper only monitored him for nine minutes after stating the monitoring period would begin. Trottier also contends that even if he was monitored for a full fifteen minutes, the trooper's "ability to observe and employ his senses of hearing, sight, and smell were compromised when he attempted to do multiple tasks at the same time."

Pursuant to I.C. § 18-8004(4), the Idaho State Police are charged with promulgating standards for administering tests for breath alcohol content. *State v. DeFranco*, 143 Idaho 335, 337, 144 P.3d 40, 42 (Ct. App. 2006). To carry out the authority conferred by that statute, ISP issued operating manuals as well as SOP for the maintenance and operation of breath test

equipment.  *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). Noncompliance with these procedures is a ground for vacating an administrative license suspension under I.C. § 18-8002A(7)(d).  *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28.  In this case there is no evidence in the record or argument based upon applicable manuals.[1]

The applicable SOP for breath alcohol testing provided that "[p]rior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes. . . . During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/burp/vomit/regurgitate."  6.0 Idaho Standard Operating Procedure Breath Alcohol Testing, Section 6.1.  The SOP noted that "[d]uring the monitoring period, the Operator must be alert for any event that might influence the accuracy of the breath alcohol test."  Section 6.1.4. "If mouth alcohol is suspected or indicated, the Operator should begin another 15-minute waiting period before repeating the testing sequence."  Section 6.1.4.1.  If the subject vomits or regurgitates, the fifteen-minute period must begin again.  Section 6.1.4.2.  Pursuant to Section 6.1.4.3, if there is doubt as to events occurring during the monitoring period, the officer should look at the results of the two samples for evidence of potential alcohol contamination, and the officer is referred to Section 6.2.2.2.  Section 6.2.2.2 states that "[t]he results for duplicate breath samples should correlate within 0.02 to indicate the absence of alcohol contamination in the subject/individual's breath pathway . . . ."

This Court has addressed the fifteen-minute monitoring period in *Bennett v. State, Dep't of Transp.*, 147 Idaho 141, 206 P.3d 505 (Ct. App. 2009).  We noted that the purpose of the monitoring period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation.  *Id.* at 144, 206 P.3d at 508.  *See also State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999).  To satisfy the monitoring requirement, the level of surveillance "must be such as could reasonably be expected to accomplish" that purpose.  *Bennett*, 147 Idaho at 144, 206 P.3d at 508. Furthermore, in *DeFranco*, this Court commented that the fifteen-minute monitoring period is not an onerous burden and that "[t]his foundational standard ordinarily will be met if the officer

---

[1]     These manuals have changed over time.  The courts have periodically looked to these manuals for information regarding the requirements of the monitoring period.  *See State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999).  It appears, however, that ISP's current focus in regard to outlining procedures is through the SOP.

stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." *DeFranco*, 143 Idaho at 338, 144 P.3d at 43. Therefore, "[s]o long as the officer is continually in [a] position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the [monitoring] period, the observation complies with the training manual instructions." *Bennett*, 147 Idaho at 144, 206 P.3d at 508; *cf. Carson*, 133 Idaho at 453, 988 P.2d at 227 (holding that the arresting officer's ability to supplement his visual monitoring of Carson with his other senses was substantially impaired by numerous sources of noise, the officer's own hearing impairment, and his position facing away from Carson while transporting him during the monitoring period).

The hearing officer, in the findings of fact and conclusions of law and order, addressed the question of whether the evidentiary test was performed in compliance with the Idaho Code and the SOP. There, the hearing officer found:

1. The affidavit submitted by Officer Schwecke states the evidentiary test was performed in compliance with Idaho Law and ISP Standard Operating Procedures.

2. Trottier argues that the 15 minutes observation period was not followed and cites the Latah County District Court decision of *Denneson v. State of Idaho, Department of Transportation* memorandum opinion as his authority.

3. The facts in *Denneson* can be distinguished from Trottier's case, however. A review of the video recording (portions of it audio only) reveals that hardly any of the distractions from the close monitoring that existed in the *Denneson* case were present in Trottier's fifteen minute period.

4. In *Bennett v. State of Idaho, Department of Transportation*, 147 Idaho 141 (App. 2009), the Court of Appeals clarified that during the 15-minute observation period ". . .[T]he level of surveillance must be such as could reasonably be expected to accomplish the purpose of the requirement. In light of the purposes of the requirement, 'observation' can include not only visual observation but use of other senses as well. So long as the officer is continually in position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the observation period, the observation complies with the training manual instructions. In this regard, the officer need not 'stare fixedly' at the subject for the entire observation period." Applying the reasoning and language of *Bennett*, Officer Schwecke's reading of the suspension advisory during the 15 minute waiting period is permissible and any other distractions that occurred were minimal.

5. Trottier also argues that the observation period was not for a full fifteen minutes because the officer announced that the period would begin after the reading of the suspension advisory form. However, the officer was

able to maintain close contact with Trottier from the time he *concluded* the field sobriety tests up until the breath samples were obtained, which covered at least fifteen minutes (2:27 to 2:42 on the video timer). Based on the record and despite his own intentions for a timeframe, the guidelines from the ISP Standard Operating Procedures were properly followed by Officer Schwecke in this case.

6. ISP, Idaho Breath Alcohol Standard Operating Procedures, Rule 6.1 states the following: "Prior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes." Consequently, the Standard Operating Procedure, revised and effective 11/01/2010, sets forth recommended language rather than mandatory language, and failure to comply with the recommended language shall not bear the sufficient weight to suppress the evidentiary test results. The revisions to ISP's Idaho Breath Alcohol Standard Operating Procedures were recently upheld in a Nez Perce County District Court case, *State of Idaho v. Abraham Louis Smith*, Case No. CR10-11081 dated August [sic] August 23, 2011.

7. An acceptable breath alcohol test normally includes two breath samples separated by a difference of .02 or less, and if this condition exists, the consistent and similar BRAC results of .148/.144 confirms that no residual mouth alcohol was present nor was there any other foreign substances present which may have skewed the breath test results or influenced the reliability of the test.[2]

8. Trottier further argues that the video recording showed a two minute time difference from the time readings on the Lifeloc FC20 instrument. The lack of synchronicity between the timer on the video and that of the breath testing instrument is not a fatal defect that would render the evidentiary test results inadmissible. As shown in the video recording, the 15 minute waiting period and the breath testing procedures were conducted in essential compliance with the ISP Standard Operating Procedures.

9. The Petitioner, Trottier, did not affirmatively show by a preponderance of the evidence that the test was not performed in compliance with Idaho Law and ISP Standard Operating Procedures.

10. The evidentiary test was performed in compliance with Idaho Law and ISP Standard Operating Procedures.

As noted, the hearing officer based his decision in part on Trooper Schwecke's affidavit. Regarding the stop, the trooper stated: "During the mandatory fifteen minute waiting period I

---

[2] This finding apparently relates to SOP 6.2.2.2, which states that "[t]he results for duplicate breath samples should correlate within 0.02 to indicate the absence of alcohol contamination in the subject/individual's breath pathway . . . ." While we understand the correlation from an intuitive point of view, we are aware of no data or evidence which substantiates that the correlation indicates an absence of alcohol contamination.

remained in close proximity to TROTTIER with nothing between us. I did not hear or see him burp, belch, or vomit."

In regard to the videotape, after Trottier was asked to exit his vehicle, the trooper began the horizontal gaze nystagmus evaluation. During this time, the trooper was face-to-face with Trottier. The trooper then began his demonstration of the walk and turn. On one occasion during the trooper's demonstration, the trooper looked down at the ground and turned his back to Trottier as he walked a straight line. Trottier's girlfriend also appeared on the video and, for officer safety, the trooper turned to ask the woman to move. During his demonstration, the trooper looked into Trottier's mouth for any foreign substance, which is the usual first step in beginning the monitoring period. The trooper also noted the time on his watch after checking Trottier's mouth.

Trottier then began the walk and turn evaluation. The evaluation lasted roughly thirty-six seconds, of which Trottier had his back turned to the trooper for about half the time.[3] Trottier was then asked to complete the one-leg stand evaluation. During these evaluations, the trooper was standing within a few footsteps of Trottier, although at times looking at Trottier's feet. The trooper then informed Trottier that he failed the evidentiary tests.

After Trottier was informed of failing the field sobriety tests the trooper stated:

> What I'll do is I'll take you back to my vehicle; I'll read you off the form that explains where you are sitting at. Okay? Once I'm done reading you that form and giving you the mandatory fifteen-minute waiting period, okay, I will give you a chance to give me a couple of samples on my portable breath tester.

Trottier argues this is the time the fifteen-minute monitoring period started. On the contrary, while the trooper stated his intention to give the fifteen-minute monitoring period, he did not state it began at that point, as Trottier contends.

---

[3] This Court recently dealt with issue of an officer turning his back to the suspect during the fifteen-minute monitoring period in *Wilkinson v. State, Dep't of Transp.*, 151 Idaho 784, 788, 264 P.3d 680, 684 (Ct. App. 2011). There, the officer had his back turned to Wilkinson for one minute and fifty seconds of the fifteen-minute period, but that length of time did not void the test results because the officer could hear the suspect at all times while his back was turned. *Wilkinson*, 151 Idaho at 788, 264 P.3d at 684. We note, however, that Wilkinson was monitored in a closed environment, as opposed to in the field as here.

The trooper and Trottier then moved towards the trooper's vehicle and were out of view of the video. During the time the trooper and Trottier were outside the camera's view, the trooper: (1) read the advisory form; (2) answered some of Trottier's questions; (3) set up the machine; and (4) had Trottier submit his two breath samples.[4] During this period there is no indication from the video or testimony that the trooper was not in close proximity and monitoring Trottier. There is nothing on the video or audio that would suggest an event which might cause mouth alcohol and Trottier did not testify to such an event.

The hearing officer, based upon the trooper's affidavit and the videotape, determined that the trooper adequately monitored Trottier for the requisite time period. We cannot say that the hearing officer's factual findings are clearly erroneous. Thus, the hearing officer's determination that the trooper adequately monitored Trottier is supported by substantial and competent evidence in the record. Trottier did not sustain his burden in demonstrating a lack of adequate monitoring.

**B.    Commercial Driver's License Disqualification**

Idaho Code § 18-8002A prescribes the penalties governing all aspects of a driver's privileges in the event that the driver submits to, but fails, evidentiary testing. I.C. § 18-8002A(4)(a). This suspension is imposed by ITD, and the statute provides for administrative review of the suspension. I.C. § 18-8002A(4), (7). The statute further grants the right of judicial review of the decision made by the administrative hearing officer. I.C. § 18-8002A(8). The motor vehicle code prescribes additional consequences which result from a driver's refusal to submit to evidentiary testing or failing such testing. These additional consequences solely relate to the ability to operate commercial vehicles. Idaho Code § 49-335(2), in relevant part, provides: "Any person who operates a commercial motor vehicle . . . is disqualified from operating a commercial motor vehicle . . . if the person . . .  submits to and fails a test to determine the driver's alcohol, drug or other intoxicating substances concentration while operating a motor vehicle."

---

[4]    In *State v. Remsburg*, 126 Idaho 338, 341, 882 P.2d 993, 996 (Ct. App. 1994) this Court held that brief diversion of attention to program the machine and read the advisory did not preclude compliance with the observation period. We also note that Remsburg was monitored at the police station.

12

Trottier claims that the CDL hearing officer violated his due process rights by: (1) disqualifying his license when a stay of the ALS decision had been issued by the district court; and (2) refusing to accept evidence and argument regarding the asserted invalidity of the failed evidentiary test.

Trottier filed a petition for review and motion for stay from the ALS determination. The district court granted a stay of the execution and/or enforcement of the decision in the ALS proceeding and the suspension of Trottier's license. In the CDL proceeding, Trottier argued that the hearing should not go forward as it was precluded by the stay. The CDL hearing officer did not agree. The stay had been filed in the matter of the ALS review. The stay precluded enforcement of the ALS determination and, particularly, suspension of Trottier's license pending appeal. Therefore, it did not directly preclude the CDL proceeding. The district court also did not believe the CDL proceeding violated the stay.

The CDL hearing officer explained that ITD's and the hearing officer's position was that the CDL proceeding was independent from the ALS proceeding. Even though the district court may issue a stay relative to the ALS determination, so long as that determination has not been vacated or the CDL proceeding itself stayed, the CDL hearing may be conducted and a decision rendered. The CDL hearing officer further commented that his understanding of the normal course of events was that upon issuance of the CDL determination, the affected driver would file for review of that decision, secure a stay similar to that in the ALS, and perhaps seek consolidation of the two appeals.[5] In this matter, if the failed evidentiary test which is on appeal in the ALS matter was upheld or vacated, the CDL decision would do the same.

The documents that Trottier sought to introduce at the CDL hearing related to the challenge to the validity of the failed evidentiary test. The CDL hearing officer indicated that the only issue to be addressed was the disqualification of the commercial driving privileges and that administrative license suspension issues would not be revisited. Consequently, he said the documents Trottier sought to introduce were beyond the scope of the proceeding. However, although the CDL proceeding was separate from the ALS proceeding, the hearing officer indicated that so long as the failed evidentiary test had not been set aside through ALS process, it could be considered in regard to the CDL disqualification. In this case, the ALS hearing

---

[5] The agency has not set out these procedures in any written form.

13

officer's finding of a failed evidentiary test was relied upon in the CDL hearing officer's decision disqualifying Trottier's commercial driving privileges for life. The CDL hearing officer determined that Trottier possessed a CDL and that Trottier failed a test to determine the driver's alcohol concentration. In addition, Trottier was determined to be subjected to a lifetime disqualification pursuant to I.C. § 49-335(4) upon a finding that Trottier had failed a prior test to determine his alcohol concentration.

In regard to the validity of the evidentiary test, the CDL hearing officer gave preclusive effect to another hearing officer's decision in the prior ALS hearing. The CDL hearing officer, in effect, applied res judicata principles to preclude relitigation of the same issues in the second hearing. The doctrine of res judicata encompasses both claim preclusion (true res judicata) and issue preclusion (collateral estoppel). *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007); *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Claim preclusion bars a subsequent action between the same parties upon the same claim, and issue preclusion protects litigants from relitigating an identical issue with the same party or its privy. *Ticor*, 144 Idaho 123, 157 P.3d at 617; *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001). Idaho law permits application of res judicata to administrative decisions. *Sagewillow v. Idaho Dep't of Water Res.*, 138 Idaho 831, 844, 70 P.3d 669, 682 (2003); *Hansen v. Estate of Harvey*, 119 Idaho 333, 336, 806 P.2d 426, 429 (1991); *J & J Contractors/O.T. Davis Constr., A.J.V. v. State, Idaho Transp. Bd.*, 118 Idaho 535, 537, 797 P.2d 1383, 1385 (1990). Except for his assertion that he was deprived of due process, which we will address hereafter, Trottier has presented no argument as to why res judicata should not apply here. In the absence of any argument as to why res judicata principles should not foreclose him from again litigating in the CDL hearing the same challenges to the breath test that were litigated in the ALS hearing, we will not find error.

The process outlined by the CDL hearing officer was followed by Trottier. Upon receipt of the adverse CDL decision, Trottier filed a petition for review with the district court. The matter was consolidated with the ALS petition for review and a stay entered precluding enforcement of the CDL disqualification. Relative to the appeal of the CDL disqualification, Trottier moved the district court to take judicial notice of the evidence presented in the ALS proceeding regarding the validity of the evidentiary test or to allow presentation of that evidence. The district court determined the motion to be unnecessary, indicating that Trottier's success or

failure in challenging the determination in the ALS proceeding would determine his success or failure in the CDL proceeding as it related to the validity of the evidentiary test. The district court, Trottier, and ITD all agreed at the hearing that if Trottier was successful in challenging the evidentiary test from the ALS determination, the CDL determination would be vacated on that basis as well.

Under the circumstances, Trottier's due process rights were not violated. Trottier was provided with and took advantage of the opportunity to challenge the legality of the stop and the validity of the evidentiary test. By the process employed, that determination, although made in the ALS proceeding, was made fully applicable to both the license suspension and the commercial driving privileges disqualification. Therefore, the CDL hearing officer's decisions regarding the ALS stay and the proffered evidence did not violate Trottier's due process rights.

### III.

### CONCLUSION

Substantial evidence in the record supports the hearing officer's findings that the trooper had legal cause to stop Trottier and properly conducted the fifteen-minute monitoring period. Therefore, we reverse the district court's order upon judicial review vacating the hearing officer's decision to uphold the suspension of Trottier's driver's license. Trottier's due process rights were not violated in the CDL proceeding and, because we reverse the district court's order vacating the suspension of Trottier's driver's license, we further reverse the district court's order vacating the lifetime disqualification of Trottier's commercial driving privileges.

Judge LANSING and Judge MELANSON **CONCUR.**