**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41534**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 86** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: October 15, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| NATHAN DAVID NEAL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge; Hon. L. Kevin Swain, Magistrate.

District court appellate decision reversing magistrate court order suppressing evidence, <u>affirmed</u>, and <u>case remanded</u>.

Tri-City Legal; Eric J. Scott, Nampa, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Nathan David Neal appeals from the order of the district court, rendered in its appellate capacity, concluding that a police officer had reasonable suspicion to stop Neal's vehicle. He argues that he did not violate traffic laws when his vehicle tires touched the line marking the edge of the lane.

**I.**

**BACKGROUND**

A police officer stopped Neal's vehicle for a traffic violation after the officer observed the vehicle drive onto, but not across, the white line marking the right-hand edge of the traffic lane. Upon speaking with Neal, the officer noticed signs of intoxication that ultimately led to his being charged with driving under the influence of alcohol, Idaho Code § 18-8004. Neal filed a motion to suppress evidence acquired during the traffic stop. He argued that the stop was

1

unconstitutional because when the stop was initiated, the officer lacked reasonable suspicion that Neal had violated a traffic law or was driving while intoxicated.

At an evidentiary hearing on the suppression motion, Neal testified that he was driving down a four-lane street early in the morning when he saw the officer's vehicle behind him. He set his cruise control to the posted speed limit and focused "strictly on maintaining [his] lane of travel." He testified that his tires did not touch the fog line at any point. He disputed an officer's report indicating that his vehicle touched the fog line as he approached Gary Lane contending, *inter alia*, that the road did not have a fog line in the vicinity of the Gary Lane intersection. He conceded, on cross-examination, that there was a bike lane to the right of Neal's traffic lane, marked with a white line, in that location. The officer testified that Neal had driven on the fog line at one location and then later on the white line demarcating a bike lane. He conceded that Neal had not driven over either line. After seeing Neal drive on the line a second time, the officer initiated a traffic stop.

The State argued that the stop was justified because Neal's driving onto the white fog line or onto the line demarcating the bike lane violated Idaho Code § 49-637(1), which provides:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

Alternatively, the State argued that Neal's driving pattern, touching the white line twice, gave rise to reasonable suspicion that Neal was driving while intoxicated.

Neal argued that intermittently driving on the line was not a sufficient basis for the stop. He asserted that I.C. § 49-637(1) cannot be construed to require "flawlessly-centered driving" because the express language of the statute only requires a driver to maintain his lane "as nearly as practicable." He also argued that his driving pattern fell within the broad range of normal driving behavior and did not indicate intoxication.

The magistrate court concluded that the State's evidence did not show a violation of I.C. § 49-637. In its view, the statute is violated when a person impermissibly enters another lane. The court reasoned that because a vehicle has not entered another lane until after it crosses the dividing line, merely touching the line does not violate the statute. It also held that the driving

pattern at issue, twice touching the line over the course of a mile but not crossing the line, fell within the range of normal driving behavior and did not give rise to reasonable suspicion that Neal was intoxicated.

The State appealed to the district court, which reversed the decision of the magistrate court. The district court held that the line dividing two lanes cannot count as a part of either lane because that would entitle drivers in both lanes to drive in the same place at the same time. That result, the district court reasoned, would be inconsistent with the legislative purpose of the statute, to prohibit dangerous driving. On this basis, the court concluded that Neal violated the statute and that the officer was justified in stopping him for a traffic offense.

## II.

## ANALYSIS

On appeal, Neal disputes the district court's interpretation of I.C. § 49-637(1). He contends that a vehicle that touches a line marking the edge of a lane has not departed from its lane and therefore has not violated the statute.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain the intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation that will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

If a criminal statute is ambiguous, the doctrine of lenity applies and the statute must be construed in favor of the accused. *State v. Bradshaw*, 155 Idaho 437, 440, 313 P.3d 765, 768 (Ct. App. 2013); *State v. Dewey*, 131 Idaho 846, 848, 965 P.2d 206, 208 (Ct. App. 1998); *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct. App. 1995). But, when a review of the legislative history makes the meaning of the statute clear, the rule of lenity will not be applied. *Bradshaw*, 155 Idaho at 440, 313 P.3d at 768; *State v. Jones*, 151 Idaho 943, 947, 265 P.3d 1155, 1159 (Ct. App. 2011).

The issue presented in this appeal is a matter of first impression. Although the State cites *In re Trottier*, 155 Idaho 17, 304 P.3d 292 (Ct. App. 2013) for the proposition that driving on the line violates I.C. § 49-637, that case did not so hold. In *Trottier*, the hearing officer rendered its decision based upon a video and the affidavit of an Idaho State Police trooper. *Id.* at 23, 304 P.3d at 298. The trooper's affidavit stated that the driver had "straddled the centerline." Straddling the centerline requires that a vehicle cross the line, not merely drive upon it. On this basis, the hearing officer found a violation of the statute. On appeal, the defendant relied solely on the videotape, which was generally "difficult to discern." This Court noted that it could reverse the hearing officer's findings of fact only if they were clearly erroneous, and we concluded that the video was insufficient for that purpose. In so ruling, we noted that "we cannot say that at least a portion of Trottier's vehicle did not touch or cross over the dividing line of the lanes of travel." *Id.* That statement, describing the limits of the Court's observations in a "difficult to discern" video, is not a holding that touching the line violates I.C. § 49-637.

We conclude that section 49-637(1) is ambiguous. To interpret it, we consider definitions of several words used in the statute. A "laned highway" is defined as "a highway which is divided into two (2) or more clearly marked lanes for vehicular traffic." I.C. § 49-113. And a "traffic lane" is defined as "that portion of the roadway for movement of a single line of vehicles." I.C. § 49-121. Neither definition resolves whether driving on, but not over, a line constitutes a failure to stay "within" the lane. The phrase "clearly marked lane" is insufficient to resolve this issue. One could reason that a "marked lane" is the space within the markings. One could also conclude that a "marked lane" is a lane that includes the markings. Neither reading is obviously incorrect.

Moreover, this issue is not one that confounds only Idaho courts. The Idaho statute mirrors Section 11-309(a) of the Uniform Vehicle Code authored by the National Committee on

Uniform Traffic Laws and Ordinances. Because that provision was adopted by many states, numerous courts have been called upon to determine whether driving on the line violates statutes with identical or nearly identical language. This issue has vexed both state and federal appellate courts and has generated a circuit split in federal courts.

Some courts have concluded that the statute is not violated when a person drives briefly on the line. *See, e.g.*, *United States v. Colin*, 314 F.3d 439, 444-45 (9th Cir. 2002) (When construing the California statute, including the "as nearly as practicable," the Court held that driving on the line for ten seconds, but not crossing it, did not amount to a violation.); *Edwards v. State*, 792 A.2d 1197, 1205 (Md. 2002) (Distinguishing, but not abandoning, a prior holding that touching the white line did not violate the statute, the Court concluded that briefly crossing the centerline was sufficiently dangerous to amount to a violation.); *State v. Lafferty*, 967 P.2d 363, 366 (Mont. 1998) (holding the statute is only violated by unsafe lane changes and not by driving on or over the line), *abrogated on other grounds by State v. Flynn*, 251 P.3d 143 (Mont. 2011); *State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. Ct. App. 1998) (holding that driving on the line does not violate the statute, but may be a sufficient basis for a stop if the "weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity").

Other courts hold that driving on the line may constitute a violation of the statute. *See, e.g., United States v. Bassols*, 775 F. Supp. 2d 1293, 1301 (D.N.M. 2011) (collecting unreported 10th Circuit cases); *State v. McBroom*, 39 P.3d 226, 228 (Or. Ct. App. 2002). However, these cases frequently hold that the driving in the particular case was not a violation due to the "as nearly as practicable" language of the statute. In *United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005), for example, the Court reasoned that a reasonable driver, travelling at a lawful speed, may from time to time travel outside of his lane, but declined to hold that "a single instance of drifting onto the shoulder can never be a violation." The Court held that a fact-specific inquiry is required. *See also McBroom*, 39 P.3d at 229 (holding that a driver does not violate the statute when he responds to "an apparent hazard" or when he has "some other valid reason for leaving his lane"); *Crooks v. State*, 710 So. 2d 1041, 1043 (Fla. Dist. Ct. App. 1998) (where driver repeatedly drove on the shoulder, the Court held that because the driver did not travel outside of the "'practicable' lane" and because he did not drive dangerously, the statute was not violated).

None of these constructions of the words in the statutes is unreasonable or absurd. Each court, including the magistrate and district courts in this case, rendered a reasoned decision. Where the same statutory language has yielded so many divergent interpretations, we cannot escape the conclusion that the statutory language is ambiguous.

Where the language of a statute is ambiguous, we may turn to other tools of construction. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *State v. Trusdall*, 155 Idaho 965, 968-69, 318 P.3d 955, 958-59 (Ct. App. 2014). If this additional step is insufficient to clarify the meaning of the statute we must apply the rule of lenity and construe the statute in favor of the accused. *Id.* at 969, 318 P.3d at 959; *State v. Morrison*, 143 Idaho 459, 461, 147 P.3d 91, 93 (Ct. App. 2006).

We can easily infer, from the substance of Idaho statutes describing moving violations, that the public policy undergirding Idaho traffic laws is safety. The laws were designed to reduce traffic accidents and the concomitant deaths, injuries, and property damage. *See, e.g.*, I.C. § 49-605 (prohibiting driving a car on the sidewalk); I.C. § 49-613 (prohibiting placing glass and other dangerous substances on the road; I.C. § 49-615 (requiring drivers use due care to avoid colliding with pedestrians); I.C. § 49-638 (prohibiting following too closely); I.C. 49-1401 (prohibiting reckless or inattentive driving). Plainly, the legislative purpose in drafting Section 49-637(1) was consistent with this general purpose. Accordingly, we conclude the statute should be construed to effectuate the legislative purpose of promoting safe driving. If it were permissible for people to drive on the line dividing lanes going the same direction, on the line demarcating bicycle lanes, or on the centerline dividing a lane from oncoming traffic, the risk of accidents will increase. Accordingly, we conclude that the statute requires that vehicles be driven *between* lane lines "as nearly as practicable."[1]

In the alternative, Neal argues that we should read the phrase "as nearly as practicable" expansively, to permit minor deviations from the one's lane. As indicated above, various courts

---

[1] We recognize that it is substantially more dangerous to drive on the centerline or bicycle lane line than it is to drive on the fog line, but we see no basis in the statutory language to distinguish between the various types of lines.

have construed this language in different ways. *Compare McBroom*, 39 P.3d at 229 (holding that a driver does not violate the statute when he responds to "an apparent hazard" or when he has "some other valid reason for leaving his lane") *with Crooks v. State*, 710 So. 2d 1041, 1043 (Fla. Dist. Ct. App. 1998) (discussing the "'practicable' lane").

In our view, however, the term "practicable" is unambiguous. It is defined as "able to be done or put into practice successfully," NEW OXFORD AMERICAN DICTIONARY 1338 (2001), and as "feasible in the circumstances," BLACK'S LAW DICTIONARY 1172 (6th ed. 1990). These definitions are not consistent with Neal's contention that "as nearly as practicable" creates a safe harbor permitting a person to occasionally leave his lane, without any apparent need, because doing so falls within the wide spectrum of normal driving behavior. We need not, at this juncture, describe all of the weather conditions, road conditions, behavior of other drivers, or other hazards that might justify a driver in leaving the lane. Here, there is simply nothing in the record to show that Neal left his lane because staying within his lane was not "practicable."

We conclude that driving on the line marking the edge of a traffic lane violates I.C. § 49-637(1) absent circumstances that would make it impracticable to stay between the lines. Because the "as nearly as practicable" exception has no application to Neal's driving, the traffic stop was justified. Accordingly, Neal is not entitled to suppression of evidence. We affirm the intermediate appellate decision of the district court and remand for further proceedings consistent with this opinion.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**